Carlos ALARCON, Carmen Alarcon, Nabil Azar, Jack Bahm, Alfred P. Blomquist, Dorothy A. Blomquist, Joseph E. Bohm, Constance M. Bohm, Richard H. Boschetti, Martin F. Brueckner, Bert W. Cartwright, Rose A. Cartwright, James F. Chmelik, Gerald Clayton, Dale M. Cunningham, June M. Cunningham, Edward M. Dagger, Ralph E. Davis, Byron L. Ernst, Donald W. Frey, Richard O. Geiss, Vicki L. Geiss, Dev Raj Goyal, Floyd L. Howsden, Susan Howsden, M. Wayne Johnson, Janet Kimbell, Paul L. Kincaid, Nancy F. Kincaid, Robert R. Marcell, Kathryn R. Marcell, Johnie McCoy, Michael J. Michael, George J. Mittelstaedt, Jerry Mohr, Alice Mohr, Fred Ozawa, Harvey Pickford, Jerry D. Santi, Richard O. Schaum, Mary Schaum, Fred W. Schmidt, Yvonne M. Schmidt, Donald J. Sebert, Pamela Sebert, Jothi Shanker, Donald Shara, Joseph Shirley, Avis Shirley, John VanOrsdol, Christine VanOrsdol, James C. Wagner, Rosemary Wagner, David A. Whiting, and James Kimbell, Plaintiffs,

v.

Ronald G. WILLIAMS, William Pratt, Edward T. Pratt, Mid–Cities Hotel, Bruce Cunningham, Jack Pratt, Subrata Ghosh, Ruffa and Hanover, P.C., Shank Irwin and Conant, First RepublicBank of Dallas, Pratt Hotel Corporation, Samuel Konigsberg, Bob Kathuria, Defendants.

Carlos ALARCON, Carmen Alarcon, Nabil Azar, Jack Bahm, Alfred P. Blomquist, Dorothy A. Blomquist, Joseph E. Bohm, Constance M. Bohm, Richard H. Boschetti, Martin F. Brueckner, Bert W. Cartwright, Rose A. Cartwright, James F. Chmelik, Gerald Clayton, Dale M. Cunningham, June M. Cunningham, Edward M. Dagger, Ralph E. Davis, Byron L. Ernst, Donald W. Frey, Richard O. Geiss, Vicki L. Geiss, Dev Raj Goyal, Floyd L. Howsden, Susan Howsden, M. Wayne Johnson, James Kimbell, Janet Kimbell, Paul L. Kincaid, Nancy F. Kincaid, Robert R. Mar-

cell, Kathryn R. Marcell, Johnie McCoy, Michael J. Michael, George J. Mittelstaedt, Jerry Mohr, Alice Mohr, Fred Ozawa, Harvey Pickford, Jerry D. Santi, Richard O. Schaum, Mary Schaum, Fred W. Schmidt, Yvonne M. Schmidt, Jothi Shanker, Vanitha Shanker, Donald Shara, Joseph Shirley, Avis Shirley, John Van Orsdol, Christine Van Orsdol, James C. Wagner, Rosemary Wagner, and David A. Whiting, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,[1] National Capital Corporation and Peoples Heritage Savings Bank, Defendants.

Civ. A. Nos. 88–CV–70745–DT, 88–CV–75033–DT.

United States District Court, E.D. Michigan, S.D.

Jan. 11, 1991.

Stephen P. Ormond, Tucker & Rolf, Southfield, Mich., for plaintiffs.

Gordon A. Becker, Vestevich, Dritsas, McManus, Evans, Payne & Vicko, P.C., Bloomfield Hills, Mich., for intervening defendant Peoples Heritage.

Richard Zuckerman, Detroit, Mich., and Jay Vogelson, Dallas, Tex., for defendants

---

1. The Federal Deposit Insurance Corporation, which is the receiver for First City National Bank and Trust, was substituted for First City on January 10, 1990.

Midcities, Jack Edward & William Pratt and Pratt Hotel.

Kenneth J. McIntyre, Linda McAlpine, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant F.D.I.C.

Ronald L. Cornell, Vandeveer, Garzia, Mt. Clemens, Mich., for defendant Bruce Cunningham.

Reese C. Lenheiser, Detroit, Mich., for defendant Subrata Ghosh.

Robert A. Hudson, Berry, Moorman, King & Hudson, Detroit, Mich., for defendant Bob Kathuria.

## MEMORANDUM OPINION AND ORDER GRANTING FDIC'S MOTION FOR SUMMARY JUDGMENT

### and

### GRANTING PEOPLES HERITAGE SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, District Judge.

These consolidated actions [2] are presently before the court on (1) the motion of the Federal Deposit Insurance Corporation (FDIC), one of the defendants in the 88–75033 action,[3] for summary judgment, filed November 28, 1990; and (2) the motion of Peoples Heritage Savings Bank ("Peoples"), another of the defendants in the 88–75033 action,[4] for summary judgment, filed November 28, 1990. Plaintiffs have responded to both motions, and defendants have filed reply briefs. The court held a hearing on both motions on January 11, 1991.

### I. Background

The court summarized plaintiffs' allegations in a memorandum opinion entered May 9, 1989, and need not do so again here. For present purposes it is enough to recall that plaintiffs in these consolidated actions allege that they purchased limited partnership interests in Bedford Associates, Ltd., which was created to acquire and improve a Holiday Inn hotel in Bedford, Texas. Plaintiffs lost their money when the investment scheme failed. In the 88–70745 action, plaintiffs assert securities fraud and state law claims against various individuals and corporate entities who allegedly were involved in the preparation and distribution of the offering documents and in the offer and sale of the limited partnership interests.

In the 88–70533 action, essentially the same group of plaintiffs allege that First City National Bank and Trust (First City Bank or FCB), for whom the FDIC has been substituted, and National Capital Corporation (NCC) aided and abetted the securities law violations alleged in the 88–70745 action by financing plaintiffs' investment in Bedford Associates. Plaintiffs' central allegations are as follows:

4. Although the PPM stated ... that the Hotel would not be acquired unless all Units were bought and paid for, closing occurred while over 20% of the Units were "in funding." Defendants, however, continued to make the loans after May 31, 1986 (the termination date of the offering) and after July 31, 1986 (the closing date on the sale of the Hotel). Moreover, Defendants failed to pay all proceeds to Bedford or in the alternative, extracted huge undisclosed fees, which were charged against Bedford, in part. Consequently, adequate funds were never received from Defendants, and undercapitalized Bedford was unable to meet its obligations. Mid–Cities, whose agent Bruce Cunningham, was also a Bedford Vice–President, then brought an action which forced Bedford into bankruptcy. The Hotel, and all improvements and capital generated by over two million innocent investor dollars were seized by Mid–Cities.

\* \* \* \* \* \*

---

**2.** The court consolidated the 88–70745 and 88–75033 actions on May 2, 1989.

**3.** The FDIC is not a defendant in the 88–70745 action. Although the FDIC filed a motion in that action to substitute for defendant First RepublicBank of Dallas, the court denied that motion as moot on January 11, 1989, after dismissing the complaint by stipulation as to First RepublicBank.

**4.** The court granted Peoples' motion to intervene as a defendant in this action on November 5, 1990.

45.... First City was the sole lending bank, as designated by the general partner, for the financing of investor purchases of Bedford Units. Upon information and belief, First City aided and abetted in the offer and sale of Units in Michigan, Texas, Florida, California, Georgia, New York, Ohio and Maryland through its participation, through its agents, in the lending of funds to investors to purchase their Bedford Units and through one or more loans to the general partner of its affiliates.

46. National Capital Corporation ... acted as an agent of First City in aiding and abetting in the offer and sale of units in Michigan, Texas, Florida, California, Georgia, New York, Ohio and Maryland through its participation, through its agents, in the participation of lending funds to investors to purchase their Bedford units.

\* \* \* \* \* \*

50. Each Unit in Bedford was priced at $38,000. Investors either paid Bedford the $38,000 per Unit directly or borrowed the money from a lender provided by Bedford namely, Defendant First City ... The borrowing arrangement required investors to pay Bedford $1,000 directly and borrow $37,000 from First City. First City was then supposed to transmit the $37,000 in loan proceeds to Bedford on behalf of the investors who borrowed. The PPM provided that the cash proceeds of each loan were to be deposited into the escrow account [with First RepublicBank Dallas, a defendant in the 88–70745 action] prior to the termination date of the offering (May 31, 1986). If such cash proceeds were not available by such termination date, the investors' subscription proceeds were to be returned to the investors....

First Amended Complaint, para. 4, 45–46, 50. Plaintiffs assert claims for aiding and abetting securities laws violations (Count I), breach of contract (Count II), and negligence (Count III). For relief, plaintiffs seek cancellation of the notes held by defendants,[5] damages, costs, interest and attorneys' fees.

In its counter-complaint, the FDIC alleges that certain plaintiffs/counter-defendants[6] have defaulted on their notes. These plaintiffs/counter-defendants assert a litany of affirmative defenses, including FCB's breach of contract, FCB's failure to perform conditions precedent to performance by counter-defendants, FCB's breach of fiduciary duty, FCB's participation in a fraudulent scheme to defraud counter-defendants, FCB's fraud and misrepresentations "including ... fraudulent statements and misrepresentations which appeared in the loan documents and bank records," want of consideration, and the FDIC's "previous knowledge of fraud, misrepresentations and securities laws violations committed against counter-defendants at the time that counter-plaintiffs purchased ... the obligations on the notes."

## II. *Summary Judgment Standard*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden is on the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (em-

---

**5.** Plaintiffs' notes originally were held by FCB. The FDIC obtained the notes when FCB went into receivership. The FDIC later sold certain of the notes to Peoples. Thus, some of the notes in question are now held by the FDIC, while others are held by Peoples.

**6.** Paragraph 4 of FDIC's counter-complaint alleges that the following plaintiffs/counter-defendants are in default on their notes: Donald Frey, Janet and James Kimbell, Fred Ozawa, Richard and Mary Schaum, Donald Shara, Joseph and Avis Shirley, and John and Christine VanOrsdol.

phasis in original). Viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), summary judgment should be entered only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–80 (6th Cir.1989).

### III. *Motion of Defendant FDIC for Summary Judgment*

Defendant/counter-plaintiff FDIC seeks summary judgment as to both (1) plaintiffs' claims and (2) FDIC's counterclaims on the notes. The FDIC's arguments apply equally to both (1) and (2).

The FDIC first argues that plaintiffs may not escape liability on their notes because plaintiffs' defenses to repayment of the notes may not be asserted against the FDIC. The FDIC relies primarily on *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny; 12 U.S.C. § 1823(e); and the "holder in due course" doctrine.

In *D'Oench, Duhme*, defendant gave a bank a note with the understanding that the bank would not call the note for payment.[7] The FDIC later obtained the note and sued to collect on it. Defendant argued that the note was unenforceable because it "was given without any considera-

tion whatever and with the understanding that no suit would be brought thereon ..." 315 U.S. at 456, 62 S.Ct. at 679. The district court adopted the FDIC's position that this side agreement "constituted a misrepresentation which would deceive the creditors of the bank, the state banking authorities and [the FDIC] ..." and held that defendant "was an innocent holder of the note in good faith and for value and that [defendant] was estopped to assert want of consideration as a defense." *Id.*

In affirming, the Supreme Court noted that "an accommodation maker is not allowed that defense ... where his act contravenes a general policy to protect the institution of banking from such secret agreements." 315 U.S. at 458, 62 S.Ct. at 680. The Court went on to say:

> The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [FDIC] relied in insuring the bank was or was likely to be misled.

315 U.S. at 460, 62 S.Ct. at 681.

The holding of *D'Oench, Duhme* was codified in 12 U.S.C. § 1823(e),[8] which states:

**(e) Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the interest of the Corporation

---

**7.** The circumstances of this side agreement are described as follows:

> Respondent [FDIC] instituted this suit ... on a demand note for $5000, executed by petitioner in 1933 and payable to the Belleville Bank & Trust Co. ... Respondent insured that bank January 1, 1934; and it acquired the note in 1938 as part of the collateral securing a loan of over $1,000,000 to the bank, made in connection with the assumption of the latter's deposit liabilities by another bank. Since 1935 the note had been among the charged off assets of the bank. The note was executed by petitioner in renewal of notes which it had executed in 1926. Petitioner, who was engaged in the securities business at St. Louis, Missouri, had sold the bank certain bonds which later defaulted. The original notes were executed to enable the bank to carry the notes and not show any past due bonds. Proceeds of the bonds were to be credited on the notes. The receipts for

the notes contained the statement, "This note is given with the understanding it will not be called for payment. All interest payments to be repaid." Respondent had no knowledge of the existence of the receipts until after demand for payment on the renewal note was made in 1938.... Petitioner's president, who signed the original notes, knew that they were executed so that the past due bonds would not appear among the assets of the bank, and that the purpose of the interest payments was "to keep the notes alive."

315 U.S. at 453–54, 62 S.Ct. at 678.

**8.** *See Kilpatrick v. Riddle,* 907 F.2d 1523, 1524 n. 1 (5th Cir.1990) (noting that the *D'Oench, Duhme* doctrine "was later codified at 12 U.S.C. § 1823(e)"); *FDIC v. Wood*, 758 F.2d 156, 159 (6th Cir.1985) ("This holding [of *D'Oench, Duhme*] is generally considered to have been codified in 12 U.S.C. § 1823(e)").

in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Plaintiffs argue that *D'Oench, Duhme* and § 1823(e) do not apply to bar their defenses to the notes now held by the FDIC. A reading of *D'Oench, Duhme,* alone, suggests that the rule prevents an obligee from asserting defenses to a note or other obligation when the defense is based on a "secret agreement" or other misconduct in which the obligee participated.[9] Plaintiffs hasten to point out that in the present case there is no such "side agreement" in which they participated. The "side agreements" alleged by plaintiffs

were of an entirely different sort, namely, between First City and certain of the defendants in the 88–70745 action.

The *D'Oench, Duhme* rule, however, as codified in § 1823(e), has been greatly expanded to bar defenses other than the one asserted by the defendant in *D'Oench, Duhme.*[10] In *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the FDIC brought an action on a promissory note. Defendants argued that the note was unenforceable because it had been procured by certain misrepresentations about the property[11] they had purchased with the borrowed money. The district court rejected this argument because the alleged misrepresentations did not meet the writing requirements of § 1823(e), and entered summary judgment for the FDIC. The Fifth Circuit affirmed.

In affirming the Fifth Circuit, the Supreme Court reviewed the purposes of § 1823(e):

One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities ... and when the FDIC is deciding whether to liquidate a failed bank ... or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank ... The last

---

**9.** As the Sixth Circuit stated in *FDIC v. Wood,* 758 F.2d 156, 159 (6th Cir.1985), "The Supreme Court held in *D'Oench, Duhme* that a secret agreement designed to deceive creditors or the public authority or tending to have that effect would not be a defense against the FDIC on its collection of a note."

**10.** In *FDIC v. McCullough,* 911 F.2d 593, 600 (11th Cir.1990), the court stated:

[T]he policy considerations leading to the development of federal common law in *D'Oench* have resulted in extension of the *D'Oench* estoppel doctrine well beyond that precise factual setting. Borrower defenses premised upon other purported, unwritten statements leading to claims of fraudulent inducement or failure of consideration are now also generally precluded by *D'Oench* and its progeny.... Such defenses if allowed against the FSLIC or the FDIC would, like the defense at issue in *D'Oench,* contravene the primary federal policy that the FSLIC and the FDIC must be able to rely upon financial institutions' records in

order to best protect the public funds they administer.... The evil to be prevented in any of these situations is precisely the same: the private party seeks to rely upon unrecorded promises or schemes that purport to impose obligations other than those appearing in the bank's records upon the financial institution.

*See also Kilpatrick v. Riddle,* 907 F.2d 1523, 1527 (5th Cir.1990) ("Since the initial statement of the doctrine in *D'Oench, Duhme,* the Court has expanded its preclusive effect well beyond the context of an oral 'secret agreement' between the bank and the borrower.").

**11.** Defendants executed the note in consideration for a loan from Planters Trust & Savings Bank to purchase land. Defendants asserted that Planters told them the land "consisted of 1,628.4 acres, when in fact it consisted of only 1,522, that the property included 400 mineral acres, when in fact it contained only 75, and that there were no outstanding mineral leases on the property, when in fact there were." 484 U.S. at 89, 108 S.Ct. at 400.

kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." ... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

A second purpose of § 1823(e) is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure. Neither purpose can be adequately fulfilled if an element of a loan agreement so fundamental as a condition upon the obligation to repay is excluded from the meaning of "agreement."

484 U.S. at 91–92, 108 S.Ct. at 401 (citations omitted). The Court also stated:

Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

484 U.S. at 93, 108 S.Ct. at 402.

The defendants in *Langley* argued that the requirements of § 1823(e) should not apply where the bank's misrepresentations were fraudulent and the FDIC knew of this defense when it acquired the note.[12] The Court rejected this argument and held that "neither fraud in the inducement nor knowledge by the FDIC is relevant to the section's application." *Id.*

The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew.

\* \* \* \* \* \*

A condition to payment of a note, including the truth of an express warranty, is part of the "agreement" to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach. Because the representations alleged by petitioners constitute such a condition and did not meet the requirements of the statute, they cannot be asserted as defenses here.

484 U.S. at 95–96, 108 S.Ct. at 403. *See also FDIC v. McCullough*, 911 F.2d 593, 600 n. 5 (11th Cir.1990) ("it is irrelevant whether the FSLIC or FDIC has knowledge of the unrecorded agreement or scheme at the time it acquires the note"); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990) (FDIC's knowledge of defunct bank's fraud irrelevant to application of § 1823(e)); *FDIC v. Kratz*, 898 F.2d 669, 671 (8th Cir.1990) (same).

Similar considerations arose in *FDIC v. Investors Associates X., Ltd.*, 775 F.2d 152 (6th Cir.1985). In *Investors Associates*, defendant Milton Turner signed two blank notes and gave them to a bank CEO, C.H. Butcher, in connection with a bank refinancing scheme.[13] Butcher assured Turner that the notes would be filled in collectively for $750,000 and that Turner would not incur any personal liability on the notes. Butcher also showed Turner "letters ostensibly indicating that ... the FDIC approved

---

**12.** The FDIC was appointed receiver for Planters in May 1984. The previous month the FDIC had "conducted an examination of Planters during which it learned of the substance of the lawsuits with the Langleys, including the allegations of Planters' misrepresentations." 484 U.S. at 89, 108 S.Ct. at 400. In October 1984, the FDIC was substituted as plaintiff in Planters' action on the note. Thus, the FDIC knew of the lawsuit and the notemakers' defenses before it acquired the note.

**13.** Turner signed the notes in consideration for a 20% interest in a limited partnership created to raise new capital for the bank. 775 F.2d at 154.

of the refinancing plan." 775 F.2d at 154. Butcher later made the notes payable to two banks for a total of $890,000; neither note contained any limitation on Turner's liability. The FDIC obtained both notes and sought to recover on them. Turner argued that the notes were unenforceable because (1) he had acted in good faith, and (2) the FDIC "was aware of the circumstances surrounding the execution of the two notes." 775 F.2d at 155. The district court rejected both arguments and entered summary judgment for the FDIC.

In affirming, the Sixth Circuit agreed that Butcher's oral assurances constituted agreements "likely to mislead the banking authorities" within *D'Oench, Duhme.* *Id.* The court found Turner's good faith and the FDIC's knowledge to be irrelevant. 775 F.2d at 155–56. Additionally, the court stated:

> [T]he Court [in *D'Oench, Duhme*] was less concerned with the particular defense presented by that case, failure of consideration, than with the fact that the maker's defense originated out of the secret agreement transaction. Accordingly, we conclude that *D'Oench* estops the maker of a note from asserting any defense arising out of the fraudulent scheme, including representations made by another participant in the scheme.... Applying the foregoing principle to this case, since Turner's non-liability agreement, fraud in the inducement, and state and federal security law defenses are all premised upon Butcher's misrepresentations in perpetrating the fraudulent scheme, Turner is estopped from asserting them.

775 F.2d at 156.

In *FDIC v. Dixon,* 681 F.Supp. 408 (E.D.Mich.1988), defendant Dixon acquired a ten percent interest in a limited partnership, "SWDR5." Dixon made a cash contribution to SWDR5 and executed an assumption agreement binding herself to the Penn Square Bank for ten percent of a loan to SWDR5. The partnership used the loan to purchase a drilling rig. The partnership failed and the FDIC eventually obtained both the note and the assumption agreement. In defending against the FDIC's collection action, Dixon argued *inter alia* that the note was unenforceable because "the SWDR5 promoters' misrepresentations fraudulently induced her to bind herself to the SWDR5 limited partnership's loan obligation." 681 F.Supp. at 410.

In granting the FDIC summary judgment, the district court first rejected Dixon's argument that "the misrepresentations allegedly made to her by the SWDR5 promoters do not constitute 'agreements' within the meaning of section 1823(e)." 681 F.Supp. at 411. The court stated:

> This argument was thoroughly considered and expressly rejected by the Fifth Circuit in *Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355, 360–61 (5th Cir. 1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Applying section 1823(e) despite improper actions taken by a party other than the failed bank, the *Chatham Ventures* court noted that the language of the statute "makes no express exception for agreements initiated by a third party and the obligors." *Id.* ...
>
> \* \* \* \* \* \*
>
> [T]he narrow definition of an "agreement" urged by Dixon represents a substantial threat to the FDIC's evaluation process because Dixon's defense arises from discourse between individuals with no direct ties to the failed bank ... or to the FDIC. In short, the rule proposed by Defendant Dixon would virtually eviscerate the protection that the *Langley* Court characterized as indispensable to the FDIC....
>
> In light of logical considerations posited by *Langley,* and based on the express holding of *Chatham Ventures,* the Court finds that the misrepresentations allegedly made to Dixon by the SWDR5 promoters fall within the definition of an "agreement" in the context of section 1823(e).

681 F.Supp. at 411–12.

■ The court believes that the *D'Oench, Duhme* rule and § 1823(e) bar the defenses counter-defendants raise to enforcement of their notes. In a nutshell, counter-defendants argue that these notes are unenforceable because FCB and NCC obtained them as part of a fraud conspir-

acy. The cases cited above, taken together, stand for the proposition that such defenses may not be asserted against the FDIC unless the asserted "agreements" meet the writing requirements of § 1823(e). *See also Kilpatrick v. Riddle,* 907 F.2d 1523, 1527–28 (5th Cir.1990) ("it is now clear that borrowers who execute facially unqualified obligations may not prevent a federal receiver's collection efforts by claiming that they were induced to execute the obligations by fraud"). Plaintiffs do not contest the FDIC's representation that these writing requirements have not been met in this case.[14] Accordingly, the court shall grant summary judgment for the FDIC, both on plaintiffs' complaint[15] and on the FDIC's counter-complaint. As the court noted in *Dixon, supra,* plaintiffs'/counter-defendants' "recourse, if any, is against the individuals and entities who allegedly defrauded" them, not against the FDIC. 681 F.Supp. at 414 n. 6. *Accord Kilpatrick,* 907 F.2d at 1524, 1529.

## IV. *Motion of Defendant Peoples Heritage Savings Bank for Summary Judgment*

Defendant Peoples Heritage Savings Bank ("Peoples") argues that it, too, is entitled to summary judgment on both (1) the claims of those plaintiffs who seek cancellation of notes held by Peoples,[16] and (2) Peoples' counter-complaint to recover on these notes.

■ Peoples cites extensive authority, with which the court fully concurs, for the proposition that when the FDIC has obtained a note previously held by a bank which has gone into receivership, and assigns the note to another bank, the assignee bank is entitled to the same protection under *D'Oench, Duhme* and § 1823(e) as the FDIC itself. In other words, if the note is enforceable in the hands of the FDIC, it is equally enforceable in the hands of the assignee bank. *See, e.g., Kilpatrick v. Riddle,* 907 F.2d 1523, 1528 (5th Cir. 1990); *FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989); *Adams v. Madison Realty*

---

**14.** This representation is supported by the affidavit of Victor Safara, attached to the FDIC's summary judgment motion as Exhibit 3. In addition, any suggestion that the bank may have made any such representations to plaintiffs/counter-defendants is expressly refuted by the "Borrowers Letter" which each plaintiff/counter-defendant signed as part of the loan documents (and which is a bank record). One paragraph of this letter states:

*Investment Knowledge*

I acknowledge and fully understand that the Bank is acting solely as a lender and not as an investment advisor. The Bank has made no attempt to analyze or evaluate my intended investment in the Partnership. *The Bank has made no representations to me, expressed or implied, to induce me to request this loan.* The bank has given no opinion or advice as to whether it is wise or prudent for me to invest funds in the Partnership. *The bank has made no representations concerning the Partnership, its General Partner(s) or their financial strength, prospects or integrity....* I agree to hold the Bank harmless and do hereby release the Bank from any and all claims that I may have relating to or arising out of my investment.

Exhibit 17 to FDIC's summary judgment motion (emphasis added).

**15.** The *D'Oench, Duhme* doctrine bars affirmative claims as well as defenses based on unre-

corded agreements. *See, e.g., Kilpatrick v. Riddle,* 907 F.2d 1523, 1528 (5th Cir.1990) ("It is further clear that if the plaintiffs' defenses are barred by the *D'Oench, Duhme* doctrine, then their defenses framed as causes of action must also be barred, because any other result would nullify the doctrine"); *Bell & Murphy & Associates v. Interfirst Bank Gateway,* 894 F.2d 750, 753 (5th Cir.1990) (same). *See also* 12 U.S.C. § 1821(d)(9)(A) ("any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation"). Accordingly, since the FDIC is entitled to summary judgment on its counter-complaint, it follows that it is also entitled to summary judgment on plaintiffs' claim based on the alleged fraud and other wrongdoing of the bank and third parties.

**16.** The plaintiffs in question are Carlos and Carmen Alarcon, Jack Bahm, Richard H. Boschetti, James F. Chmelik, Gerald Clayton, Dale M. and June M. Cunningham, Edward M. Dagger, Ralph E. Davis, Richard O. and Vicki L. Geiss, Dev Raj Goyal, M. Wayne Johnson, Paul L. and Nancy F. Kincaid, Robert R. and Kathryn R. Marcell, Johnie McCoy, Michael J. Michael, George J. Mittelstaedt, and Jerry and Alice Mohr.

& *Development, Inc.*, 746 F.Supp. 419, 428 (D.N.J.1990); *Gulf Federal Savings & Loan Association v. Mulderig*, 742 F.Supp. 358, 361 (E.D.La.1989); *Deposit Guaranty Bank v. Hall*, 741 F.Supp. 1287, 1290 (S.D.Tex.1990); *Morgan v. Heights Savings Association*, 741 F.Supp. 620, 622 n. 1 (E.D.Tex.1990); *Nelson & Associates, Inc. v. Sunbelt Savings*, 733 F.Supp. 1106, 1111–12 (N.D.Tex.1990).

For the reasons stated above, the court has determined that the notes held by the FDIC are enforceable against the counter-defendant makers of the notes. The three affidavits of Norman E. Bilodeau, Peoples' senior vice-president in charge of retail lending, dated September 17, 1990, October 26, 1990, and November 23, 1990, establish that on February 21, 1990, Peoples acquired the notes in question from the FDIC after the FDIC was appointed receiver for FCB. Copies of the notes are attached to Peoples' summary judgment motion as Exhibits A–Q.

In their response to this motion, plaintiffs argue that the FDIC did not assign the notes to Peoples because Peoples "had a substantial ownership interest in the notes long before the FDIC's involvement in this matter and Peoples Heritage cannot assert any protections that the FDIC might be able to claim."

Plaintiffs point to a Loan Participation Agreement between FCB and Peoples dated May 11, 1987 (Exhibit D to plaintiffs' response), pursuant to which Peoples purchased from FCB a 90% "participation interest" in certain notes, including the ones

---

**17.** Plaintiffs also point to a Loan Sale and Servicing Agreement (Exhibit C to plaintiffs' response brief) dated July 17, 1987, pursuant to which Peoples purchased certain notes from FCB, including the ones at issue in this case. Under this agreement, FCB again had the sole responsibility to collect payments (sections 5.01, 5.03, 5.08); if a borrower defaulted on a loan, FCB guaranteed to pay Peoples the outstanding principal and interest (section 5.50(b)). Plaintiffs assert that this agreement was superseded by the Loan Participation Agreement which, although dated May 11, 1987, was executed in October 1987:

Because of these regulatory problems, First City approached Peoples Heritage and requested that the wholesale loan agreement be converted to a participation agreement in which First City would take back title to the

at issue in this case. Under this agreement, FCB was solely responsible for servicing the notes and pursuing collection in the event of default (sections 4(a), 7(a), 7(e), 9).[17]

The court does not believe that the Loan Participation Agreement (or, assuming it was ever in effect, the Loan Sale and Servicing Agreement) between Peoples and FCB diminishes the extent to which Peoples' enjoys the protection of the *D'Oench, Duhme* doctrine or § 1823(e). It is apparent from the face of these agreements that Peoples did not have the legal authority, in the event of default, to proceed against plaintiffs. Bilodeau specifically avers that

First City National Bank and Trust (and later, the FDIC as receiver) had the exclusive right to service the loans in question, including the right to file suit to collect on the notes. Peoples Heritage Savings Bank did not have that right. Peoples acquired this right when it became the holder of the notes as a result of its purchase of the notes from the [FDIC] in February 1990.

Bilodeau's 10–26–90 affidavit, para. 4. Plaintiffs do not contest the representation that FCB had the sole right to pursue collection efforts, even after it sold a participation interest to Peoples. When FCB went into receivership, this right passed to the FDIC which, in turn, assigned it to Peoples in a purchase agreement dated February 21, 1990, a copy of which is attached to Bilodeau's September 17, 1990, affidavit. The federal policies recognized by *D'Oench, Duhme* and § 1823(e) would

loans previously sold to Peoples Heritage and Peoples Heritage would retain a 90% participation interest in the notes. In order to accomplish this transfer a participation agreement was executed in October, 1987 (although backdated to May 11, 1987) between First City and Peoples Heritage.

Plaintiffs' response brief at 4. Peoples does not challenge these assertions in its reply brief. Plaintiffs' account is consistent with Bilodeau's averment that "when Peoples ... purchased the notes from the FDIC, Peoples['s] ... rights and responsibilities as a participant in these loans were governed by a participation agreement with First City ..." Bilodeau's 10–26–90 affidavit, para. 4. Thus, the parties are in agreement that Peoples had a 90% participation interest in the notes, and later purchased the remaining 10% from the FDIC.

be defeated if the FDIC were prevented from freely transferring this interest. Accordingly, the court finds that counter-defendants' defenses to the notes held by Peoples are barred under *D'Oench, Duhme* and § 1823(e).

 Even if *D'Oench, Duhme* and § 1823(e) did not apply to the 90% interest acquired in May 1987, Peoples would be entitled to the protection of the holder in due course doctrine under the Uniform Commercial Code, unless Peoples had "notice that [the notes were] overdue or ha[ve] been dishonored or of any defense against or claim to [them] on the part of any person," M.C.L. § 440.3302, U.C.C. § 3–302, and would take the notes free of personal defenses, *see* M.C.L. § 440.3305, U.C.C. § 3–305.[18]

The notes at issue in this case were executed in 1986. Consequently, at the time Peoples acquired a 90% interest in the notes (1987), it could not have had notice of the defenses plaintiffs assert in these consolidated actions, which were filed in 1988. Nor do plaintiffs allege, either in the complaint or in their response to Peoples' motion, that Peoples had any such notice. Bilodeau specifically avers that Peoples "had no contact with First City ... prior to the spring of 1987, which is after the above-named counterclaim defendants executed their notes and after the incidents of which plaintiffs complain against the FDIC in their complaint." Bilodeau's 10–26–90 affidavit, para. 5. Plaintiffs have failed to meet their burden under Fed.R.Civ.P. 56(e) to "set forth specific facts showing that there is a genuine issue for trial" as to whether Peoples is a holder in due course.

Accordingly, the court finds that Peoples is a holder in due course of counter-defendants' notes and took the notes free from the defenses plaintiffs seek to assert. Thus, even if *D'Oench, Duhme* and § 1823(e) did not apply, Peoples would be entitled to summary judgment as holders in due course.

---

18. In *FDIC v. Wood,* 758 F.2d 156, 160 (6th Cir.1985), the court stated:

"Personal" defenses, such as failure of consideration and usury, are not truly defenses against the note itself, but rather are defenses or claims stemming from the underlying transaction. For simplicity, these are allowed as defenses to the note when the original wrongdoer tries to collect on it. But when the note comes into the hands of an innocent party, a holder in due course, he takes it free of all personal defenses.

## V. *Conclusion*

For the reasons stated above,

IT IS ORDERED that the defendant FDIC's motion for summary judgment is granted both as to plaintiffs' claims and the FDIC's counter-complaint.

IT IS FURTHER ORDERED that the motion of defendant Peoples Heritage Savings Bank for summary judgment is granted both as to plaintiffs' claims and Peoples' counter-complaint.

SO ORDERED.