Cordus JACKSON, Jr., Petitioner,

v.

Gary THWEATT, Respondent.

**FEDERAL DEBT MANAGEMENT, INC., Petitioner,**

v.

Lee WEATHERLY, Respondent.

Nos. D–3057, D–3437.

Supreme Court of Texas.

March 9, 1994.

Rehearing Overruled April 20, 1994.

---

John Gregory Hale, Houston, Don Busby, Temple, Steven T. Polino and James Masek, Dallas, for petitioners.

Jon H. Burrows, Jack R. Crews, Temple and Robert H. Renneker, Dallas, for respondents.

Chief Justice PHILLIPS delivered the opinion of the Court in which all Justices join. Justice ENOCH not sitting.

Under 12 U.S.C. § 1821(d)(14), the FDIC has six years to bring suit on delinquent notes acquired from a failed bank. The issue presented in these consolidated cases is whether purchasers of such notes from the FDIC obtain the benefit of this federal limitations period. Because we conclude that they do, we affirm the judgment of the court of appeals in *Jackson v. Thweatt*, 838 S.W.2d 725, and reverse the judgment of the court of appeals in *Federal Debt Management, Inc. v. Weatherly*, 842 S.W.2d 774. Both causes are remanded to the trial court for further proceedings.

I

*Jackson v. Thweatt*

Cordus Jackson Jr. executed a promissory note to the People's National Bank of Lampasas in January 1984, which he failed to pay when it became due on May 3, 1984. The Federal Deposit Insurance Corporation ("FDIC") became the owner and holder of the note on April 18, 1985, when it was appointed receiver for the bank. On December 28, 1988, the FDIC sold the note to Gary Thweatt.

Thweatt sued Jackson on the note on April 15, 1991. The trial court granted Jackson's subsequent motion for summary judgment based on the four-year limitations period set forth in Tex.Civ.Prac. & Rem.Code § 16.004. The court of appeals reversed, concluding that, because Thweatt acquired the note from the FDIC, the suit was governed by the six-year limitation period set forth in 12 U.S.C. § 1821(d)(14). 838 S.W.2d at 728. As this limitation period did not begin running until April 18, 1985, when the FDIC was appoint-

ed receiver, Thweatt's suit was held to be timely.

### Federal Debt Management, Inc. v. Weatherly

Lee Weatherly defaulted on three promissory notes payable to Heritage National Bank maturing between September and November, 1986. The FDIC acquired the Weatherly notes on September 25, 1986, when it was appointed receiver for the bank. On October 27, 1989, it sold the notes to Federal Debt Management, Inc.[1] Federal Debt Management sued Weatherly on the notes on April 15, 1991. As in *Thweatt*, the trial court granted summary judgment for the defendant based on the Texas four-year statute of limitations. The court of appeals affirmed, concluding that the six-year limitations period under 12 U.S.C. § 1821(d)(14) did not apply to actions filed by assignees of the FDIC. 842 S.W.2d at 779.

The courts of appeals in *Thweatt* and *Weatherly* thus reached opposite conclusions on this important issue. We granted both applications for writ of error to resolve this conflict.

### II

12 U.S.C. § 1821(d)(14) provides as follows:

(A) In General

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation[2] as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law....

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

This provision was enacted in 1989 as part of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101–73, § 212(d)(14), 103 Stat. 183, 232–33 (1989).[3]

Jackson and Weatherly do not dispute that the collection suits against them would be timely if governed by section 1821(d)(14). They argue, however, that this provision applies only to actions brought by the FDIC, not to actions brought by the FDIC's successors in interest. Additionally, Jackson argues that section 1821(d)(14) does not apply

1. Federal Debt Management is a Texas corporation engaged in the business of purchasing notes from the FDIC and the Resolution Trust Corporation.

2. "Corporation" in this statute refers to the FDIC. 12 U.S.C. § 1811.

3. Before 1989, claims brought by the FDIC were governed by 28 U.S.C. § 2415(a), the limitations period applicable to the federal government generally. That section provides in relevant part as follows:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

26 U.S.C. § 2415(a). Courts construing this provision have split as to when the six year limitations period begins to run. *Compare, e.g., FDIC v. Hinkson*, 848 F.2d 432, 434–35 (3rd Cir.1988) (limitations does not begin to run until the FDIC acquires the claim), *with FDIC v. Belli*, 981 F.2d 838, 840 (5th Cir.1993) (limitations begins to run when the claim could have first been sued upon, even if the FDIC had not yet acquired the cause of action). FIRREA resolved this issue by providing that limitations begins to run, at the earliest, when the FDIC acquires the claim. § 1821(d)(14)(B). Also, FIRREA allows the FDIC to take advantage of state limitations if it is longer than six years, whereas courts construing section 2415(a) concluded that it completely superseded state limitations. *See, e.g., Hinkson*, 848 F.2d at 434.

retroactively to claims arising before FIR-REA's enactment.

### A

■ Section 1821(d)(14) expressly refers only to actions "brought by the [FDIC]."[4] The court of appeals in *Weatherly*, as well as the dissent in *Thweatt*, concluded that the language of this statute is plain and, regardless of policy considerations, could not be construed as applying to actions brought by *assignees* of the FDIC. We conclude, however, that the FDIC's successors in interest are entitled to the benefits of section 1821(d)(14) pursuant to the common law maxim that "[a]n assignee stands in the shoes of his assignor." *FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir.1993); *see also* 6A C.J.S. Assignments, §§ 76–77 (1975).

The Uniform Commercial Code incorporates this rule with regard to promissory notes:

> (a) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

Tex.Bus. & Com.Code § 3.201(a) (Tex.UCC) (Vernon 1968). The policy underlying this rule "is to assure the holder in due course a free market for the paper." § 3.201 comment 3. This policy is particularly compelling with regard to notes acquired by the FDIC from an insolvent banking institution and sold to third parties pursuant to a purchase and assumption transaction. One of FIRREA's purposes was to "provide funds from public and private sources to deal expeditiously with failed depository institutions." Pub.L. No. 101–73, § 101(8). If the FDIC's statute of limitations did not enure to the

benefit of its transferees, the market value of notes and other assets in the hands of the FDIC would be diminished, hindering this statutory purpose. As noted in *Fall v. Keasler*, 1991 WL 340182, at *4 (N.D.Cal. Dec. 18, 1991):

> To hold that assignees are relegated to the state statute of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets. The FDIC can only make full use of the market in discharging its statutory responsibilities if the market purchasers have the same rights to pursue actions against recalcitrant debtors as does the FDIC.

*See also* Brian J. Woram, *FIRREA's Statutes of Limitations: Their Availability to Purchasers From the FDIC*, 110 Banking L.J. 292 (1993) (concluding that FIRREA limitations should be extended to subsequent purchasers); James J. Boteler, Comment, *Protecting the American Taxpayers: Assigning the FDIC's Six Year Statute of Limitations to Third Party Purchasers*, 24 Tex. Tech L.Rev. 1169, 1200 (1993) (same).

Because of this strong policy rationale, and in accordance with the principle that an assignee receives the full rights of the assignor, most courts have interpreted section 1821(d)(14), as well as the predecessor limitations provision in 28 U.S.C. § 2415(a), as extending to purchasers from the FDIC. *See Jon Luce Builder, Inc. v. First Gibraltar Bank, F.S.B.*, 849 S.W.2d 451, 455 (Tex. App.—Austin 1993, writ denied); *Pineda v. PMI Mortgage Ins. Co.*, 843 S.W.2d 660, 669 (Tex.App.—Corpus Christi 1992), *writ denied*, 851 S.W.2d 191 (Tex.1993); *Bledsoe*,

---

**4.** Although the language of the statute is actually limited to "actions brought by the [FDIC] as *conservator or receiver*," it is made expressly applicable to the FDIC in its corporate capacity pursuant to 12 U.S.C. § 1823(d)(3)(A), which provides:

> IN GENERAL.—With respect to any asset acquired or liability assumed pursuant to this

section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title.

*See FDIC v. Howse*, 736 F.Supp. 1437, 1445 (S.D.Tex.1990).

989 F.2d at 810; *Fall v. Keasler,* 1991 WL 340182, at *2–3; *Mountain States Financial Resources v. Agrawal,* 777 F.Supp. 1550, 1552 (W.D.Okl.1991), *White v. Moriarty,* 15 Cal.App. 4th 1290, 19 Cal.Rptr.2d 200, 204 (1993); *Martin v. Pioneer Title Co.,* 1993 WL 381101, at *2–3 (Idaho 4th Dist.Ct.1993); *Cadle Co. II, Inc. v. Lewis,* 254 Kan. 158, 864 P.2d 718 (1993); *Central States Resources Corp. v. First Nat. Bank in Morrill,* 243 Neb. 538, 501 N.W.2d 271, 278 (1993). *But see Tivoli Ventures, Inc. v. Tallman,* 852 P.2d 1310, 1313 (Colo.App.1992).

This reading does not contravene the plain language of the statute. Although section 1821(d)(14) does not expressly create a special limitations rule for transferees, it unquestionably does so for the FDIC. The FDIC, as possessor of this right, may transfer it incident to the asset to which the limitations period relates. Thus, while the statute alone might not vest any rights in transferees, the statute combined with the common law of assignment does. As the Fifth Circuit noted in *Bledsoe,* "[a]s the statute at hand is silent as to the rights of assignees, we turn to the common law to fill the gap." 989 F.2d at 810.

An analogy may be drawn to the FDIC's special rights under 12 U.S.C. § 1823(e). This provision essentially codifies the holding of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), in which the Supreme Court ruled that unrecorded agreements that tend to mislead banking examiners cannot be raised as a defense against the FDIC. *See Kilpatrick v. Riddle,* 907 F.2d 1523, 1526 (5th Cir.1990); *FDIC v. Newhart,* 892 F.2d 47, 49 (8th Cir. 1989); *see also* Peter G. Weinstock and Christopher T. Klimko, *Banking Law,* 45 Sw.L.J. 1, 12 (1991). Although section 1823(e) also expressly applies only to the FDIC, its protection has generally been extended to purchasers of assets from the FDIC. *See, e.g., Victor Hotel Corp. v. F.C.A. Mortgage Corp.,* 928 F.2d 1077, 1083 (11th Cir.1991); *FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989); *Fleet Bank of Maine v. Steeves,* 785 F.Supp. 209, 213–15 (D.Me. 1992); *CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90, 93 (E.D.Va.1992); *Alarcon v. Williams,* 772 F.Supp. 334, 342 (E.D.Mich. 1991); *B.L. Nelson and Assocs. v. Sunbelt Sav.,* 733 F.Supp. 1106, 1112 (N.D.Tex.1990). This extension is likewise founded on the policy that, for assets to be marketable in the hands of the FDIC, its protections must be available to purchasers. *See Newhart,* 892 F.2d at 49–50; *Brinson,* 806 F.Supp. at 93; *Alarcon,* 772 F.Supp. at 343–44.

Jackson and Weatherly would dismiss this analogy because section 1823(e) is merely a statutory parallel of the common law *D'Oench Duhme* doctrine. Courts are free to extend a common law right, they contend, but not one that arises by statute, such as limitations. If Congress had intended subsequent purchasers to benefit from section 1821(d)(14), the argument goes, Congress would have expressly said so.

The cases cited above, however, have extended not only the common law *D'Oench Duhme* doctrine, but its statutory counterpart as well. Further, the fact that the federal limitations rule arises purely by statute does not preclude courts from looking to federal common law in interpreting and applying that rule. Congress could have expressly made section 1821(d)(14) applicable to the FDIC's successors in interest, but one could just as easily argue that "Congress knew of the extensive body of case law extending the FDIC's benefits (like federal holder in due course, *D'Oench Duhme* and Section 1823(e)), and therefore thought it unnecessary to restate the federal common law." Woram, supra at 304. In *Bledsoe,* the court noted that

[i]t is an axiomatic principle of statutory construction that in effectuating Congress' intent courts are to fill the inevitable statutory gaps by reference to the principles of common law.

989 F.2d at 810. Similarly, the Supreme Court has directed federal courts "to fill the interstices of federal legislation 'according to their own standards' " in areas affecting nationwide federal programs. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) (quoting *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)). Federal banking law undoubtedly constitutes such a program. *See* Woram, supra at 308.

## B

Jackson and Weatherly also argue that statutes of limitations do not confer a "right" transferrable to assignees. In *City of Dallas v. Etheridge*, 152 Tex. 9, 253 S.W.2d 640, 643 (1953), we stated that "statutes of limitations do not affect the substantive rights of parties; they merely bar the remedy by which one party seeks to enforce his substantive rights." In the present case, however, the FDIC's successors in interest are not asserting the FIRREA limitations provision to *avoid* an obligation, but rather to *enforce* obligations that would otherwise be barred under state law. In this context, FIRREA does create a right transferable to subsequent purchasers. *See* Woram, supra at 306; Boteler, supra at 1178.

■ Alternatively, Jackson and Weatherly contend that the FIRREA limitations provision is a right "personal" to the FDIC, and thus non-transferable according to the general rule as stated in Corpus Juris Secundum:

Unless a contrary intention is manifest or inferable, an assignment ordinarily carries with it all rights, remedies, and benefits which are incidental to the thing assigned, *except those which are personal to the assignor and for his benefit only.*

6A C.J.S. Assignments, § 76 (1975) (emphasis added). Jackson and Weatherly basically argue that the FIRREA limitations provision is personal to the FDIC simply because it is the only party expressly named in the statute. An examination of the cases cited in Corpus Juris Secundum in support of the quoted rule, however, reveals that rights "personal" to the assignor are those which, although relating to the property assigned, constitute accrued causes of action that may be asserted independently of ownership of the property. *See Breidecker v. General Chem. Co.*, 47 F.2d 52 (7th Cir.1931) (conveyance of land held not to constitute an assignment of the grantor's cause of action for damages previously sustained for trespass upon the land conveyed); *Huston v. Ohio & Colorado Smelting & Ref. Co.*, 63 Colo. 152, 165 P. 251 (1917) (assignment of stock held not to transfer assignor's cause of action for fraud in connection with the stock's purchase). The extended limitations period afforded by FIRREA, which confers no benefit independent of the asset to which it relates, does not fall into this category.

For the foregoing reasons, we conclude that, pursuant to federal common law, the limitations provision of 12 U.S.C. § 1821(d)(14) applies to actions brought by purchasers of assets from the FDIC.

## III

■ Jackson further argues that section 1821(d)(14) cannot apply retroactively to claims arising before FIRREA's enactment on August 9, 1989.

The statute contains no express provision dictating either prospective or retroactive application, and the legislative history on this issue is sparse and inconclusive.[5] The Unit-

---

5. Representative Solomon Ortiz commented as follows during floor debates:

I seek to clarify the intent and effect of prospective application of the proposed bill. I understand this bill would redefine and augment the powers of the Federal Deposit Insurance Corporation when that Corporation serves as receiver for a failed financial institution. The powers set forth in this bill are, in many respects, new, and there is no intent that such powers be applied to receiverships that have been established prior to the enactment of this bill.

135 Cong.Rec. H5003 (daily ed. Aug. 3, 1989). Henry B. Gonzalez, one of FIRREA's sponsors, stated that "as far as I know, there is no retroactive language in any part of the bill that would have any impact one way or the other on pending litigation." 135 Cong.Rec. H2748 (daily ed. June 15, 1989). Representative Ortiz, however, was not on a major committee overseeing FIRREA, and Representative Gonzalez's comment was in response to a specific question unrelated to limitations. *See* Jett Hanna, *Statute of Limitations Issues in FDIC and RTC Claims Against Attorneys Representing Failed Financial Institutions*, 12 Rev.Litig. 619, 640–41 (1993).

Senator Donald Riegle, referring specifically to the limitations provisions, commented that these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation, and help ensure the accountability of the persons responsible for the massive losses the Government has suffered through the failures of insured institutions. The provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods.

135 Cong.Rec. S10,205 (daily ed. Aug. 4, 1989). This legislative history has been referred to as "fragmentary and contradictory." *Hanna*, supra at 640.

ed States Supreme Court has provided conflicting guidance as to retroactive operation of a statute where the intent of Congress is not manifest. In *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court stated that "[C]ongressional enactments ... will not be construed to have retroactive effect unless their language requires this result." Conversely, the Court stated in *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), that

> a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

Despite this tension,[6] it has generally been held that procedural rules apply retroactively. *See United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985); *Fust v. Arnar–Stone Labs, Inc.*, 736 F.2d 1098, 1100 (5th Cir.1984). In accordance with this principle, most courts have concluded that section 1821(d)(14) applies retroactively to causes of action in existence when the statute was passed in August 1989. *See FDIC v. Belli*, 981 F.2d 838, 842 (5th Cir.1993); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 487 (9th Cir.1991); *RTC v. Foley*, 829 F.Supp. 352, 353 (D.N.M.1993); *RTC v. Greenwood*, 798 F.Supp. 1391, 1397 (D.Minn.1992); *FDIC v. Schoenberger*, 781 F.Supp. 1155, 1158 (E.D.La.1992); *FDIC v. Bancinsure, Inc.*, 770 F.Supp. 496, 499 (D.Minn.1991); *RTC v. Krantz*, 757 F.Supp. 915, 922 (N.D.Ill.1991); *FDIC v. Howse*, 736 F.Supp. 1437, 1446 (S.D.Tex.1990); *Central States Resources Corp. v. First Nat. Bank in Morrill*, 243 Neb. 538, 501 N.W.2d 271, 277 (1993). *But see FDIC v. Cherry, Bekaert & Holland*, 742 F.Supp. 612, 616 (M.D.Fla.1990).

Retroactive application of section 1821(d)(14) is especially appropriate since it does not create an entirely new limitations scheme, but rather merely clarifies and amends the existing law under 28 U.S.C.

§ 2415(a).[7] *See Howse*, 736 F.Supp. at 1446; *Schoenberger*, 781 F.Supp. at 1158. Retroactive application thus creates no manifest injustice. For these reasons, we agree with the majority of courts that have applied section 1821(d)(14) retroactively.

Jackson further argues that, even if section 1821(d)(14) is generally accorded retroactive application, its enactment cannot revive a claim already stale under state limitations. Jackson apparently contends as follows: the Texas four year statute of limitations commenced on May 3, 1984, when Jackson defaulted on his promissory note. Although this state limitations provision was superseded by 28 U.S.C. § 2415(a) while the note was held by the FDIC, it once again became applicable when Thweatt acquired the note on December 28, 1988. Recovery on the note was thus barred as soon as it was acquired by Thweatt, as this occurred more than four years after the original default. Because the claim was barred under state law when FIRREA was passed in 1989, it cannot be revived by that legislation, even assuming retroactive application.

■ Jackson correctly identifies the well-settled rule that a special federal limitations provision will not revive a claim already barred under state law. *See Belli*, 981 F.2d at 842; *FDIC v. Former Officers and Directors of Metropolitan Bank*, 884 F.2d 1304, 1309 n. 4 (9th Cir.1989); *Hinkson*, 848 F.2d at 434; *FDIC v. Consol. Mortgage and Fin. Corp.*, 805 F.2d 14, 17 n. 4 (1st Cir.1986). For example, if the FDIC is appointed receiver of a Texas bank five years after the default of an outstanding loan, suit is barred by the four-year Texas statute of limitations even though the federal limitations period is six years.

This rule does not apply here, however, as the claim against Jackson was not stale when the FDIC was appointed receiver in 1985, less than a year after Jackson's default. The FDIC thus obtained the benefits of the six year limitation period under 28 U.S.C.

---

**6.** The Supreme Court noted the "apparent tension" between *Bradley* and *Bowen* in *Kaiser Aluminum & Chem. Corp. v. Bonjomo*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), but found it unnecessary to resolve the conflict in that case.

**7.** As discussed at note 3, supra, section 1821(d)(14) expressly resolves the conflict under section 2415(a) concerning when the six year limitations period begins to run, and also grants the FDIC the benefit of the state statute of limitations if longer than six years.

**178**

§ 2415(a), the forerunner of section 1821(d)(14). The claim in the hands of the FDIC was therefore *not* barred when FIR-REA was passed in August 1989, as this was less than six years after the initial default. The FDIC thus would have obtained the retroactive benefits of FIRREA. Thweatt, as assignee, likewise succeeds to those rights.

To summarize, we hold that section 1821(d)(14) applies to actions brought by purchasers of assets from the FDIC to recover on those purchased assets, and that it applies retroactively to claims in existence on August 9, 1989. Section 1821(d)(14) thus governs the collection actions against Jackson and Weatherly. Because these actions were filed within six years after appointment of the FDIC as receiver, they were timely. The judgment of the court of appeals in *Jackson v. Thweatt* is affirmed, and the judgment of the court of appeals in *Federal Debt Management, Inc. v. Weatherly* is reversed. Both causes are remanded to the trial court for further proceedings.