**Robert W. DILLARD, Donald R. Dillard & Dillard Graphics, Inc., Appellants,**

v.

**NCNB TEXAS NATIONAL BANK, Appellee.**

**No. 3–90–222–CV.**

Court of Appeals of Texas, Austin.

Aug. 30, 1991.

Nicolai von Kreisler, Susan J. Haney, von Kreisler & Swanson, P.C., Austin, for appellants.

Dennis Reese, Small, Craig & Werkenthin, Austin, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

POWERS, Justice.

The plaintiff, NCNB Texas National Bank, recovered summary judgment against the defendants, Dillard Graphics, Inc., Robert W. Dillard, and Donald P. Dillard, on their guarantees. The defendants appeal. We will reverse the judgment and remand the cause to the trial court.

## THE CONTROVERSY

On March 10, 1987, Service Typesetting and Printing, Inc. executed a promissory note in the amount of $124,000, payable to the order of RepublicBank Austin. On the same day, each defendant executed a written guarantee in favor of RepublicBank Austin, obliging them to pay the debt if the maker (Service Typesetting and Printing, Inc.) failed to do so.

According to the plaintiff's allegations, the maker renewed and extended its debt by a series of promissory notes:

1. A note dated April 15, 1987, in the amount of $124,000, payable to the order of "RepublicBank Austin."

2. A note dated May 15, 1987, in the amount of $124,000, payable to the order of "RepublicBank Austin."

3. A note dated August 17, 1987, in the amount of $119,190.35, payable to the order of "First RepublicBank Austin, N.A."

4. A note dated February 12, 1988, in the amount of $109,090.10, payable to the order of "First RepublicBank Austin, N.A."

The maker failed to pay the note dated February 12, 1988. The plaintiff sued the maker on the note and the defendants on their guarantees. To explain its ownership of the debt, the plaintiff alleged that "First RepublicBank Austin, N.A. was the successor-in-interest to RepublicBank Austin"; that the Federal Deposit Insurance Corporation was the receiver of First Republic Bank Austin, N.A.; and that the plaintiff owned the debt as "the assignee of the Federal Deposit Insurance Corporation." The plaintiff prayed for judgment in the amount of $107,028.81, the amount allegedly owed on the note dated February 12, 1988, prejudgment and post-judgment interest, attorney's fees, costs, and general relief.

After the defendants appeared and answered, the plaintiff moved for summary judgment, averring that it was "the present owner and holder of the Note and Guaranties" because it "is the assignee of the Federal Deposit Insurance Corporation as receiver of First RepublicBank Austin, N.A. [which] was the successor-in-interest to RepublicBank Austin." The plaintiff prayed alternatively that it have partial summary judgment on any issues deemed proper by the court.

Before the motion was heard, the defendants interposed various matters as set out in an amended answer and original counterclaim. The answer set up a general denial and four affirmative defenses: usury and breach of contract, based on the plaintiff's petition, which allegedly claimed a right to judgment in excess of the amount of the guarantees; failure of consideration; and fraud on the part of RepublicBank Austin and First RepublicBank Austin, N.A., for which the defendants were entitled to rescission of their guarantees. In their counterclaim against the plaintiff, the defendants asserted three causes of action: usury; breach of contract; and fraud. The defendants pleaded the acts and omissions respecting its three rights of action as a basis for recovering from the plaintiff compensatory damages, statutory damages, and exemplary damages, for which the defendants prayed.

In an original answer to the defendants' counterclaim, the plaintiff averred (1) that it was a holder in due course and (2) that there existed no duty in First Republic-Bank Austin that could give rise to a claim for fraud.

## THE SUMMARY JUDGMENT

On September 7, 1989, the trial court heard the plaintiff's motion for summary judgment. In a document entitled "Partial Summary Judgment," the court awarded the plaintiff judgment against the defendants in the amount of $107,028.81, together with pre-judgment and post-judgment

interest, attorney's fees to be determined by mediation, and costs of court. In addition, the document declared that the defendants' counterclaims against the plaintiff "are hereby dismissed with prejudice" because the claims were based on "acts and omissions of Republic Bank Austin, First Republic Bank Austin, N.A., their officers, employees and agents, which actions and omissions took place before July 29, 1988, the date when First Republic Bank was declared insolvent."

The defendants moved that the trial court reconsider its summary judgment. They filed as well a third supplemental answer and counterclaim in which they alleged certain causes of action and affirmative defenses in addition to those averred earlier: an additional action for and a defense of usury based on another theory; and an additional cause of action for and a defense of bad faith on the part of the plaintiff, which had allegedly accelerated one of the defendant's installment debts, in cooperation with another bank, merely because that defendant opposed the plaintiff in the present litigation.

To the defendants' motion for reconsideration and its supplemental answer and counterclaim, the plaintiff filed a motion requesting: (1) that the motion for reconsideration be denied; and (2) that the supplemental answer and counterclaim "be dismissed."

On June 8, 1990, the trial court called for hearing the defendants' motion for reconsideration. The court denied the relief requested in the motion in a document entitled "Partial Summary Judgment." The document repeats the substance of the court's earlier "Partial Summary Judgment" but adds a provision severing the defendants' new "bad faith" claim against the plaintiff.

The two documents which are said to constitute the judgment in the cause, each being entitled "Partial Summary Judgment," expressly deny all relief requested to the extent relief is not granted in the documents.

## DISCUSSION AND HOLDINGS

■ In the defendants' appeal, they contend in their first point of error that the trial court was not authorized to dismiss "with prejudice" their counterclaims against the plaintiff in the absence of a motion for summary judgment requesting that relief.

■ As indicated above, the plaintiff never moved for summary judgment regarding the defendants' claims against the plaintiff seeking money damages and other relief; rather, the plaintiff moved for summary judgment only on *its* cause of action *against* the defendants on their guarantees. "It is axiomatic that one may not be granted judgment as a matter of law on a *cause of action* not addressed in a summary judgment proceeding." *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983).[1]

To avoid the legal effect of the axiom, the plaintiff argues that the *issues* involved in the defendants' counterclaims were necessarily decided against them, as a matter of law, simply by the trial court's decision to award the plaintiff summary judgment in the face of the defendants' affirmative *defenses* then on file—an "implied" adjudication, perhaps, of the defendants' causes of action, upon which the trial court was entitled to dismiss "with prejudice" the defendants' causes of action against the plaintiff.

If one assumes the identity of issues that the foregoing theory requires, which we do for purposes of discussion only, the fact remains that the plaintiff never moved for summary judgment that the defendants take nothing by their causes of action or that these be "dismissed" for some reason "with prejudice." We are not aware of any power in the trial court to dismiss sua sponte, and "with prejudice," a pleaded cause of action. We believe that the terms of Tex.R.Civ.P.Ann. 166a(b) (Supp.1991), upon which the judgment rests in this case, contradict that theory and the theory of implied adjudication which the plaintiff

---

1. We have added the emphasis in each quotation in the opinion.

urges. The quotation above from *Chessher* also rejects the latter theory. The rule authorizes a party against whom a counterclaim is asserted to *move* for summary judgment; and this implies a necessity for such a motion before a court can award summary judgment against a counterclaim. We hold accordingly.

In addition, the plaintiff argues that the defendants waived their complaint by not objecting in the trial court concerning that court's sua sponte dismissal of the counterclaims "with prejudice," citing Tex.R.App. P.Ann. 52(a) (Pamph.1991). We hold no such objection or complaint was required in the present case in order to preserve error. We cannot sustain a theory of waiver based upon a party's failure to object to a matter concerning which his opponent's motion for summary judgment *is silent*, and based upon a court's misuse of Rule 166a to award a summary judgment without a motion therefor to which a response *could* be filed. *See El Paso Assoc. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 19–20 (Tex.App.1990, no writ); *Sumerlin v. Houston Title Co.*, 808 S.W.2d 724, 726 (Tex.App.1991, writ requested).

Because we determine that the trial court improperly dismissed the defendants' counterclaims, the summary judgment is, in effect, interlocutory. *Teer v. Duddlesten*, 664 S.W.2d 702 (Tex.1984). We will not dismiss the appeal for want of jurisdiction because the judgment from which the defendants appeal expressly disposed of all parties and issues. *Id.* at 703–704; *Schlipf v. Exxon Corp.*, 644 S.W.2d 453 (Tex.1982); *cf. City of Beaumont v. Guillory*, 751 S.W.2d 491 (Tex.1988); *410/West Ave. Ltd. v. Texas Trust Sav.*, 810 S.W.2d 422 (Tex. App.1991, no writ). We hold accordingly.

▮ The plaintiff was not entitled to summary judgment for an additional reason: the record will not permit a determination, as a matter of law, that the plaintiff was the owner of the debt evidenced by the note dated February 12, 1988.[2]

The note is payable to the order of First RepublicBank Austin, N.A. The reverse of the note shows two writings that were apparently intended to be "endorsements." In the first, the payee, First RepublicBank Austin, N.A., directed: "Pay to the Order of Federal Reserve Bank–Dallas." There is no similar writing on the note or elsewhere in the summary-judgment record that purports to transfer title from the Federal Reserve Bank–Dallas to anyone. Nevertheless, the reverse of the note also contains a direction by the Federal Deposit Insurance Corporation, as receiver for "First RepublicBank Austin" (sic), directing: "Pay to the Order of NCNB Texas National Bank, Without Recourse or Warranty."

The defendants contend the "gap" in the chain of transfers precluded a determination, as a matter of law, that the plaintiff (NCNB Texas National Bank), was the owner of the debt evidenced by the note. That is to say, they rest their contention on the fact that nothing on the note or elsewhere in the record indicates that title ever left the Federal Reserve Bank–Dallas, to which it had evidently been transferred by the First RepublicBank Austin, N.A. before its receivership.

The plaintiff purported to explain this "gap" in the chain of title by the affidavit of Randall A. Gray, an officer of the plaintiff bank who had also been an officer of the First RepublicBank of Austin, N.A. before it entered into receivership. He swore that the First RepublicBank Austin, N.A. borrowed money from the Federal Reserve Bank–Dallas, which required the bank "to pledge the notes ... which had not matured and had not been adversely rated"; and when a note matured or became adversely rated, it "was released from the pledge." Nevertheless, the affidavit declares, "[t]he pledged notes were *at all*

---

2. In our discussion, we assume the summary-judgment record to be sufficient to show a transfer of the defendants' guarantees to the plaintiff, the obligation on which they were sued. We express no opinion in that regard, however. Nor do we express an opinion on the fact that the record appears to be silent with respect to whether the maker of the note was notified of any assignment of his debt, and the effect this might have on the guarantee obligations which were made assignable by their terms. These issues are not before us.

*times* in the custody and control of" the bank. When the note in question matured on or about May 12, 1988, the affidavit continued, the note "was then an asset of" the bank because it was "no longer acceptable as collateral by the Federal Reserve Bank–Dallas." Thus, "[t]he note ... was an asset of" the bank when, on July 29, 1988, that bank "was declared insolvent by the Comptroller of the Currency." The Federal Deposit Insurance Corporation, acting as receiver for the insolvent bank, then assigned the note to the JRB Bridge Bank, N.A., the name of which was changed to that now borne by the plaintiff: "NCNB Texas National Bank."

The Gray affidavit thus sets up a theory that the First RepublicBank Austin, N.A. never actually parted with possession of or title to the note and underlying debt, contrary to the writing on the reverse of the note purporting to be an "endorsement" of the note to the Federal Reserve Bank–Dallas. Thus, the note and debt remained susceptible of assignment to the plaintiff by the Federal Deposit Insurance Corporation, as receiver for the First RepublicBank Austin, N.A. The Gray affidavit and another by Thomas Newton declare that this assignment did in fact occur, and both declare a conclusion of law and fact that the plaintiff *is* the "owner" and "holder" of the note. The plain fact remains, however, that the plaintiff could not receive title to the note and debt unless title *did* rest in the First RepublicBank Austin, N.A., so that it might be susceptible of transfer by the Federal Deposit Insurance Corporation as receiver. The record does not show this proposition as a matter of law.

■ We should first say that the note was not a "negotiable instrument" susceptible of "endorsement" in the strict sense of the word. The attribute of negotiability was defeated by the provision in the note for a variable interest rate, measured by the "Lender's Prime Rate Plus 2.00%," because this precluded the calculation of "a sum certain in money." Tex.Bus. & Comm.

Code Ann. §§ 3.104(a), 3.106 (1968); *Brazos River Authority v. Carr*, 405 S.W.2d 689, 695 (Tex.1966); *Lexington Ins. Co. v. Gray*, 775 S.W.2d 679, 682 (Tex.App.1989, writ denied); Annot., 69 A.L.R. 4th 1127, 1131–33 (1989).

Because the note was not a negotiable instrument, it was not susceptible of transfer by "endorsement" so as to create in the transferee a presumption of ownership. *See* Tex.Bus. & Comm.Code, *supra*, § 3.201. The non-negotiable note remained susceptible of "assignment," however, as in the case of any other chose in action. 10 C.J.S. Bills and Notes § 28, 437–38 (1938); *see Lexington Ins. Co.*, 775 S.W.2d at 682. In that connection, the purported endorsement to the Federal Reserve Bank–Dallas, on the reverse of the note, constituted evidence of an assignment of title to the Federal Reserve Bank–Dallas. It may even have been sufficient to establish a prima-facie title, not in the plaintiff but *in the Federal Reserve Bank–Dallas. See Carter v. Eames*, 44 Tex. 544, 547 (1876).

To negate the apparent assignment to the Federal Reserve Bank–Dallas, the plaintiff offered the affidavit of Mr. Gray. His affidavit purported to describe the intention of one party to the transaction—the First RepublicBank Austin, N.A.—and omits to impute any intention [3] to the Federal Reserve Bank–Dallas, the transferee under the "endorsement." Mr. Gray swore that the First RepublicBank Austin, N.A., at least, intended to "pledge" the note to the Federal Reserve Bank–Dallas as security under an arrangement for borrowing money from that bank. Simultaneously, however, Mr. Gray declares the note "was at all times ... an asset of and in possession of" the First RepublicBank Austin, N.A. until its receivership, and that the "pledged notes were at all times in the custody and control of" that bank.

Thus, the affidavit contradicts itself in the most basic particular: the very "pledge" it describes *required* a transfer of possession, and nothing in the affidavit

---

**3.** This would appear necessary to establish an identical intent in both parties to the transac-

tion, but we need not speculate in that regard.

purports to explain the contradictory statement that the bank *retained* possession at all times. *See* 6A C.J.S. Assignments § 5, at 596 (1975).

Moreover, the penultimate paragraph of the affidavit declares: *"But for* the pledging of said Note as security for loans from Federal Reserve Bank–Dallas, said note had *not* ... been sold, negotiated or in any other form or fashion been *conveyed* to anyone else" before the insolvency of First RepublicBank Austin, N.A. The expression "but for" implies that the note *was* sold, negotiated, or in some manner "conveyed" to the Federal Reserve Bank–Dallas, thus augmenting the evidence of an assignment to the Federal Reserve Bank–Dallas as this is reflected on the reverse of the note. And if the trier of fact should believe that there was an assignment to the Federal Reserve Bank–Dallas, title to the note and underlying debt could be shown in the First RepublicBank Austin, N.A. only if the record *also* shows that title had somehow left the Federal Reserve Bank–Dallas so that First RepublicBank Austin, N.A. might acquire it for subsequent assignment by the Federal Deposit Insurance Corporation to the plaintiff. *In this respect the record is silent.*

For the foregoing reasons, we hold the summary-judgment record does not establish as a matter of law that the plaintiff owned the debt evidenced by the note of February 12, 1988.

We reverse the summary judgment and remand the cause to the district court.

KIDD, J., not participating.