**BOSQUE ASSET CORP., Appellant,**

v.

**Robert M. GREENBERG, Appellee.**

**No. 11–98–00060–CV.**

Court of Appeals of Texas,
Eastland.

May 4, 2000.

J. Allen Smith, Constance Lynn Allison, Settle & Pou, Dallas, for appellant.

Ivan M. Scott, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

W.G. ARNOT, III, Chief Justice.

This is a lawsuit to collect on a promissory note. On or about January 12, 1990, appellee executed a promissory note in the principal sum of $49,315.50 with interest as specified in the note. The payee on the note was First National Bank, located at 508 West I–30, P.O. Box 479502, Garland, Texas 75047. The note matured according to its terms on February 16, 1991. Although the parties dispute what happened to the note from 1990 to 1994, there is no dispute that the Federal Deposit Insurance Corporation (FDIC) in its corporate capacity transferred the note to Diversified Financial Systems, Inc. (DFS) in 1994. DFS then transferred the note to First Lake Corporation (FLC) who filed suit on the note on February 15, 1996. Subsequent to FLC filing suit, the note was transferred back to DFS who transferred it to appellant. Appellant intervened in this lawsuit on June 20, 1997, when it received the note. Appellee filed a motion for summary judgment asserting that appellant's lawsuit was barred by the applicable statute of limitations and that appellant was not, as a matter of law, the owner or holder of the note. See TEX.R.CIV.P. 166a(c). In the same motion, appellee argued that he was entitled to a no-evidence summary judgment, as there was no evidence that appellant was the owner or holder of the note. See TEX.R.CIV.P. 166a(i). The trial court denied both of appellee's traditional summary judgment grounds but granted the no-evidence summary judgment under Rule 166a(i), agreeing that appellant had produced no evidence that it was the owner or holder of the note.[1]

---

1. Appellee's motion for summary judgment also requested that the trial court render judgment in its favor against FLC and DFS. The trial court granted appellee's motion for summary judgment as to both. FLC and DFS have not perfected appeals to this court; therefore, the summary judgment as to those parties is not before us.

On appeal, appellant contends that the trial court committed several errors in granting the no-evidence summary judgment. Appellee asserts in his brief that the summary judgment should be affirmed on the no-evidence grounds and, alternatively, argues in a cross-point that the summary judgment should have been granted by the trial court based on the applicable statute of limitations. We reverse the no-evidence summary judgment granted by the trial court, overrule appellee's cross-point, and remand to the trial court.

### No–Evidence Summary Judgment

The trial court granted the no-evidence summary judgment, holding that there was no evidence that appellant was the holder or the owner of the note. The trial court's conclusion was premised on perceived breaks in the chain of transfer at two levels. "First National Bank of Garland" was declared insolvent by the Office of the Comptroller of the Currency (OCC) on March 29, 1990, and the FDIC was appointed receiver. The trial court concluded that appellant presented no evidence showing that the payee on the note, "First National Bank" located in Garland, was the same entity as "First National Bank of Garland." Appellant received the note through a series of transfers that began with a transfer from the FDIC to DFS. Therefore, the trial court concluded that there was no evidence that appellant was the owner or holder of the note as there was no evidence that First National Bank, the payee on the note, ever properly negotiated the note. The second break occurred when the FDIC in its capacity as a receiver (FDIC–R) failed to endorse the note to the FDIC in its corporate capacity (FDIC–C). The trial court reasoned that appellant had produced no evidence that it was the owner or holder of the note as a necessary endorsement was missing.

■ A no-evidence summary judgment is essentially a pretrial directed verdict, and we review it under the same legal sufficiency standards applied to traditional directed verdicts. *Grant v. Southwestern Electric Power Company*, 20 S.W.3d 764, Tex.App.—Texarkana, 2000). The relevant inquiry is whether the non-movant produced any probative evidence that raised a genuine issue of material fact. *Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294, 298 (Tex.App.—Eastland 1999, no pet'n). We consider all evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. Grant v. Southwestern Electric Power Company, supra. A summary judgment is erroneously granted if the non-movant produced more than a mere scintilla of evidence in response to the no-evidence motion for summary judgment. *Grant v. Southwestern Electric Power Company, supra*. The non-movant's evidence amounts to more than a mere scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Denton v. Big Spring Hospital Corporation, supra* at 298. Conversely, if the non-movant's evidence does not reach this threshold level, it does not amount to more than a mere scintilla, and the trial court properly granted the no-evidence summary judgment. *Denton v. Big Spring Hospital Corporation, supra* at 298.

Appellant asserts, in his second point, that the trial court erred by striking certain relevant portions of appellant's summary judgment evidence. Appellant contends that this evidence creates a genuine issue of material fact which precludes the no-evidence summary judgment.

■ We first consider whether appellant produced more than a mere scintilla of evidence that the "First National Bank of Garland" that was declared insolvent was the same entity as "First National Bank" that was the original payee on the note. Appellant's response to appellee's motion for summary judgment included two affidavits. One of those affidavits was execut-

ed by Richard K. Salmon, who identified himself as an employee of the FDIC in the capacity of program manager. Attached as exhibits to Salmon's affidavit were the Office of the Comptroller of the Currency's Declaration of Insolvency and a document executed in 1996 by Eugene A. Ludwig, Comptroller of the Currency, certifying the validity of the Declaration of Insolvency. Additionally, the promissory note that formed the basis of this litigation was attached as an exhibit to his affidavit. Salmon stated in his affidavit that his duties with the FDIC included serving as "custodian of certain business records kept and maintained by FDIC" and that the two documents attached to his affidavit were "true and correct copies of records kept by the FDIC." The trial court sustained various objections lodged by appellee against the two exhibits attached to Salmon's affidavit. The trial court struck the Declaration of Insolvency, finding that it had not been authenticated and constituted inadmissible hearsay.

■■■ The Declaration of Insolvency was improperly struck by the trial court. The Declaration of Insolvency was self-authenticating as it is a copy of an official record or report that is certified as correct by a signature under seal attesting to its accuracy. Former TEX.R.CIV.EVID. 902(4). The Declaration of Insolvency was also admissible as a report of a public agency that sets forth both the activities of the agency and "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Former TEX.R.CIV.EVID. 803(8). When the requirements of the Rules of Civil Evidence are met, a presumption is created in favor of the admissibility of public records that, in this case, placed the burden on appellee to disprove admissibility by showing that the "sources of information or other circumstances indicate lack of trustworthiness." Former Rule 803(8); see *Beavers v. Northrop Worldwide Aircraft Services, Inc.*, 821 S.W.2d 669, 675 (Tex. App.—Amarillo 1991, writ den'd). Appel-

lee did not meet this burden. As it was self-authenticating and fell into an exception to hearsay, the Declaration of Insolvency was competent summary judgment evidence and should have been considered by the trial court.

There is no need for us to determine the admissibility of the promissory note in relation to Salmon's affidavit as it was before the trial court through other avenues and was considered by the trial court in its decision. Appellee attached a copy of the promissory note to his reply to appellant's response to appellee's motion for summary judgment. This was not objected to by appellant and was properly before the trial court. Additionally, both appellant and appellee have consistently asserted and the trial court found that appellee executed a note in 1990 which named First National Bank located in Garland as payee and which is the subject matter of this lawsuit. There has been no dispute as to these facts.

These two documents constitute some evidence that appellee executed a note payable to "First National Bank" located in Garland, Texas. Further, they are some evidence that, sometime after the execution of the note, the OCC declared the "First National Bank of Garland" insolvent and appointed the FDIC as receiver of the Bank. Therefore, if appellant produced more than a mere scintilla of evidence that the two named Banks were actually the same entity, the trial court improperly granted the no-evidence summary judgment on this missing link.

■■ Salmon's affidavit included the assertion that the "First National Bank of Garland … referenced in this Declaration of Insolvency, is the same bank as 'First National Bank' identified as the original payee of the Promissory Note at issue in this litigation." The trial court struck this assertion as well as various other portions of Salmon's affidavit. Appellee's objections to this statement, which were sustained by the trial court, were (1) that there was no evidence that Salmon had

personal knowledge of the statement, (2) that the statement constituted a conclusion, and (3) that there were no facts to support the statement.

TEX.R.CIV.P. 166a(f) provides that affidavits must be based on personal knowledge, must set forth such facts as would be admissible in evidence, and must show that the affiant is competent to testify to the matters set forth. Salmon stated in his affidavit that "[a]ll statements of fact contained in this Affidavit are true and correct based upon my personal knowledge." Further, Salmon's employment as a program manager with the FDIC, in connection with his affidavit, furnished a basis for finding that he had personal knowledge of the statement in question. See *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 87 (Tex.App.— San Antonio 1997, writ den'd). It can be inferred from the context of Salmon's sworn affidavit that he had personal knowledge of the matters surrounding the FDIC's takeover of the Bank, including the Bank's identity. *Llopa, Inc. v. Nagel, supra* at 87. The trial court improperly sustained appellee's first objection to this statement.

 Likewise, the trial court erred in sustaining appellee's second and third objections to Salmon's statement that "First National Bank" located in Garland and the "First National Bank of Garland" were the same bank. Mere conclusions that are not supported by facts are not competent summary judgment evidence. *Crain v. Davis*, 417 S.W.2d 53, 55 (Tex. 1967). However, Salmon's statement does not fall into that category. His employment with the FDIC in conjunction with his sworn statement that his entire affidavit was based on personal knowledge served not only to establish his personal knowledge of the subject matter of his affidavit but also to show "*how* affiant learned or *knew* of the facts." *Jackson T. Fulgham Co., Inc. v. Stewart Title Guaranty Company*, 649 S.W.2d 128, 130 (Tex.

App.—Dallas 1983, writ ref'd n.r.e.)(Emphasis in original). The statement in question was not a legal conclusion but, rather, a statement of fact based upon Salmon's personal knowledge. See *Southwell v. University of the Incarnate Word*, 974 S.W.2d 351, 354 (Tex.App.—San Antonio 1998, pet'n den'd)(holding that opinions of affiants were based on personal knowledge and that, moreover, any "conclusions or personal opinions contained in the affidavits are based upon knowledge of the facts and are substantiated by each affiant's experience and position"). As such, Salmon's statement was competent summary judgment evidence. We sustain appellant's second point and agree that the trial court improperly struck these portions of appellant's summary judgment evidence.[2]

Salmon's statement, that the original payee bank on the note was the same entity as the bank that was declared insolvent by the OCC, viewed in light of the promissory note and the OCC's Declaration of Insolvency, is more than a mere scintilla of evidence that the original payee properly negotiated the note. Whether that evidence is conclusive is not an appropriate inquiry in the context of a no-evidence summary judgment. Appellant met its burden of pointing out evidence that raises a fact issue on the challenged element. Rule 166a(i).

 The second perceived missing link in appellant's chain of transfer title upon which the trial court granted appellee's no-evidence summary judgment was the lack of an endorsement from the FDIC–R to the FDIC–C. In his sixth point, appellant asserts that such an endorsement was not necessary. We agree. In *Federal Deposit Insurance Corporation v. Patel*, 46 F.3d 482 (5th Cir.1995), the Fifth Circuit held that it was irrelevant that the FDIC was the holder and owner of a note in one capacity and sought to recover on the note in the other. The relevant fact

---

2. We do not consider the rest of appellant's summary judgment evidence that was struck by the trial court as it is not necessary to our disposition of this appeal.

was that the "FDIC was without question the holder of the Note." *Federal Deposit Insurance Corporation v. Patel, supra* at 485. The Dallas Court of Appeals recently applied the principle of *Federal Deposit Insurance Corporation v. Patel* to the question presented here and held that an endorsement from the FDIC–R to the FDIC–C was not necessary. *Boyd v. Diversified Financial Systems,* 1 S.W.3d 888, 891–92 (Tex.App.—Dallas 1999, no pet'n). Agreeing with the Dallas Court, we hold that, because an endorsement from the FDIC–R to the FDIC–C was not required, it was error to base a no-evidence summary judgment on the lack of such an endorsement and sustain appellant's sixth point of error.

We reverse the no-evidence summary judgment granted by the trial court based on the two alleged missing links in appellant's chain of title.[3]

### Statute of Limitations

■ In a cross-point, appellee asserts that summary judgment should have also been granted in his favor because appellant's cause of action is barred by the statute of limitations. This ground was raised by appellee in his motion for summary judgment and was specifically denied by the trial court. We must first consider whether we are authorized to consider this point. The Rules of Appellate Procedure were amended effective September 1, 1997. One of the changes was the addition of TEX.R.APP.P. 25.1(c). Rule 25.1(c) requires that a:

[P]arty who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. . . . The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.

There have been very few reported decisions dealing with the application of this new rule. The First Court of Appeals has held that:

If an appellee is satisfied with the relief granted by the trial court, but merely wants to present additional, independent grounds for affirming the trial court's judgment, no notice of appeal is required.

*Dean v. Lafayette Place (Section One) Council of Co–Owners, Inc.,* 999 S.W.2d 814, 818 (Tex.App.—Houston [1st Dist.] 1999, no pet'n). Additionally, the supreme court, in the context of summary judgment procedure prior to Rule 25.1(c), has held that, when the trial court grants summary judgment on grounds such that the judgment is final, appellate courts:

[S]hould consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal [and] may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy.

*Cincinnati Life Insurance Company v. Cates,* 927 S.W.2d 623, 626 (Tex.1996). Here, appellee's statute of limitations ground was presented to the trial court, specifically ruled on, and preserved for appellate review; and the trial court granted a summary judgment that was final. Additionally, appellee does not seek more favorable relief than was granted by the trial court. We will consider appellee's cross-point. Appellee is entitled to summary judgment on the affirmative defense of statute of limitations only if he has conclusively established that appellant's claim is time-barred. See *Zale Corporation v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975).

■ Appellee first argues that appellant is not entitled to rely on the federal six-year statute of limitations [4] and that his

---

**3.** Because we reverse the summary judgment based on appellant's second and sixth points,

we do not address his first, third, fourth, or fifth points.

**4.** 12 U.S.C.A. § 1821(d)(14) (West 1989 &

claim is barred by the Texas four-year statute of limitations. Appellant does not dispute that its claim is barred if the Texas four-year statute of limitations applies. Therefore, we must decide whether appellee has conclusively established that the federal statute of limitations does not apply to appellant's claim.

■ Generally, claims brought by the FDIC as well as by its assignees are governed by the federal six-year statute of limitations. See *Jackson v. Thweatt*, 883 S.W.2d 171 (Tex.1994). Appellee argues that in this case the federal statute of limitations should not apply because there is no evidence that the payee bank ("First National Bank" located in Garland) ever failed or that the FDIC was appointed receiver of it. However, as discussed above, there is some evidence that the payee bank was the same entity as the bank over which the FDIC was appointed receiver. Appellee has not conclusively established otherwise.

■ Appellee also asserts that, because appellant received the note from DFS and not from the FDIC, appellant's claim is not governed by the six-year statute of limitations. The Texas Supreme Court in *Jackson v. Thweatt* held that the federal statute of limitations applied not only to the FDIC but also to a party who purchased the note from the FDIC. *Jackson v. Thweatt, supra* at 176. Appellee appears to argue that the protection afforded to assignees of the FDIC extends only to the first assignee.[5] Although the party who was suing on the note in *Jackson* was the first assignee, we do not believe that the rationale is limited to that fact pattern. The court's decision was premised on two factors. First, the federal policy of insuring a market for the assets of failed depositories militates strongly in favor of extending the federal statute of limitations to all subsequent assignees of the FDIC. In *Jackson v. Thweatt*, the court stated that the system in which the FDIC operates is intended to "provide funds from public and private sources to deal expeditiously with failed depository institutions." To not extend the six-year statute of limitations to all subsequent assignees would take from the market the entire group of potential purchasers whose intent would be to sell the note to other parties rather than to collect on the notes themselves. Second, the court based its decision on the principle that "an assignee receives the full rights of the assignor." *Jackson v. Thweatt, supra* at 174. This principle indicates that the FDIC transferred all of its rights to DFS, that DFS transferred all of its rights to FLC, that FLC transferred all of its rights back to DFS, and that DFS then transferred all of its rights including the six-year statute of limitations to appellant.

■ Lastly, appellee argues that appellant is not entitled to the benefit of the six-year statute of limitations because there is no summary judgment evidence that it acquired the protections afforded to assignees of the FDIC. In support of this point, appellee cites *Cadle Company v. Estate of Weaver*, 897 S.W.2d 814 (Tex. App.—Dallas 1994), *cert. den'd*, 514 U.S. 1128, 115 S.Ct. 2002, 131 L.Ed.2d 1003

Pamph. Supp.1999).

5. Assignees of the FDIC receive the benefit of two specific protections in addition to the six-year statute of limitations. First, assignees of the FDIC receive the protection of the *D'Oench, Duhme* doctrine which shields assignees from defenses based upon unrecorded agreements. *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (essentially codified at 12 U.S.C.A. § 1823(e) (West 1989 & Pamph. Supp.1999)). Second, the related federal holder in due course doctrine allows assignees of the FDIC to become holders in due course in the absence of technical compliance with the requirements of state law. See, e.g., *Bailey, Vaught, Robertson and Company v. Remington Investments, Inc.*, 888 S.W.2d 860, 864 (Tex.App.—Dallas 1994, no writ). The applicability of either or both of these doctrines to the situation at hand is not before us as neither has been raised or briefed.

(1995). Appellee contends that *Weaver* stands for the proposition that an assignee of the FDIC is not automatically entitled to rely on the six-year limitations period. In *Weaver*, the court held that the assignee was not entitled to the extended federal limitations period because the FDIC's assignment expressly limited the rights and benefits purchased. *Cadle Company v. Estate of Weaver, supra* at 817. In this case, the FDIC endorsed the note over to DFS "without recourse." While that endorsement limits the FDIC's liability on the note, it does not limit what rights and benefits DFS purchased from the FDIC. TEX. BUS. & COM. CODE ANN. § 3.415 (Vernon Supp.2000). These facts are not analogous to the situation presented in *Weaver*. The FDIC's extended limitations period was assigned through each of the intermediate transfers to appellant.

■ Appellee also argues that, even if appellant is entitled to rely on the six-year limitations period, its claim is barred as appellant did not acquire the note and intervene in the lawsuit until after the expiration of the six-year limitations period. Appellee relies on *Koch Oil Company v. Wilber*, 895 S.W.2d 854, 863 (Tex.App.—Beaumont 1995, writ den'd), for the proposition that we must use the date appellant intervened in the lawsuit, not the date the lawsuit was originally filed, to determine the viability of its claim. In *Koch Oil Company*, a group of plaintiffs were added to a lawsuit by way of an amended petition. The court held that, for limitations purposes, the amended petition did not relate back to the date of the original pleading. This was true because each of the new plaintiffs asserted new and independent causes of action against the defendants. As a result, the court decided that the date that would be used to determine the viability of each plaintiff's claim was the date of the amended petition that added them as parties.

However, in this case, appellant did not assert any new cause of action when it intervened in the lawsuit. Appellant was suing on the same note that was in issue when the original petition was filed. Appellee was defending against the same allegations as when the original petition was filed. It has long been the rule that:

> [W]here suit is brought upon a negotiable instrument in the name of the payee or indorsee thereof, the statute is tolled in favor of the true owner although the latter does not intervene or become a party to the record until after the bar would, but for the filing of the suit, have attached. The holding is that the intervention does not constitute a new cause of action.

*Russell v. People's Nat. Bank of Belton*, 2 S.W.2d 961, 962 (Tex.Civ.App.—Austin 1928, writ ref'd). Appellee has not conclusively established that appellant's claim is time-barred, and the cross-point is overruled.

### This Court's Ruling

The no-evidence summary judgment granted by the trial court is reversed, and the cause is remanded to the trial court.