COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO.
2-98-276-CV
 
DIVERSIFIED FINANCIAL SYSTEMS,                                                                  
APPELLANTS
INC. AND DIVERSIFIED FINANCIAL
SOUTHEAST, INC.
V.
HILL, HEARD, O'NEAL, GILSTRAP &                                                                
APPELLEES
GOETZ, P.C. A/K/A HILL, GILSTRAP,
MOORHEAD, WHITE, BODOIN &
WEBSTER, A PROFESSIONAL
CORPORATION, DWIGHT A. HEARD,
FRANK HILL, JOINTLY AND SEVERALLY
------------
FROM THE 96
th
DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
ON REMAND
------------
I. Introduction
Appellants Diversified Financial Systems, Inc. ("Systems") and
Diversified Financial Southeast, Inc. ("Southeast") (collectively
"Diversified") appeal from the trial court's summary judgment in favor
of Appellees Hill, Heard, O'Neal, Gilstrap & Goetz, P.C. a/k/a Hill,
Gilstrap, Moorhead, White, Bodoin & Webster, a Professional Corporation
("Hill Gilstrap"), Dwight A. Heard ("Heard"), and Frank Hill
("Hill") (collectively "the Firm"). In five issues,
Diversified complains that the trial court erred in granting the Firm's
no-evidence motion for summary judgment because: (1) the affidavit attached to
Diversified's response to the motion establishes that the affidavit was based
upon the personal knowledge of the affiant; (2) Diversified's summary judgment
evidence raised a genuine issue of material fact whether Southeast was the owner
and holder of the note and guaranties; (3) Diversified's summary judgment
evidence raised a genuine issue of material fact regarding the Federal Deposit
Insurance Corporation's ("FDIC") receivership of Commonwealth Bank
("Commonwealth"); (4) Diversified's summary judgment evidence raised a
genuine issue of material fact regarding the amount due and owing by the Firm
under the note and guaranties; and (5) the Firm did not present any evidence in
support of its statute of limitations affirmative defense. We reverse the trial
court's judgment and remand this case for trial on the merits.
II. Factual Summary
This case involves a dispute over a promissory note. Commonwealth allegedly
loaned $50,000 to the Firm. Heard and Mazel Merrill signed the promissory note
on behalf of the Firm, and Heard and Hill each signed a guaranty. Systems
purchased the note and guaranties from the FDIC. Systems filed suit against the
Firm because of the Firm's failure to make payments on the loan and against
Heard and Hill for their failure to perform as guarantors. Systems assigned the
note and guaranties to Southeast, and Southeast intervened in the suit.
The Firm moved for summary judgment arguing that there was no evidence to
support Diversified's claims against the Firm. Diversified filed a response,
attaching the affidavit of Southeast employee Charles Olson ("Olson"
or "the Olson Affidavit") as summary judgment proof. The Firm objected
to the affidavit on the ground that some of Olson's statements were not within
his personal knowledge, were legal conclusions or constituted speculation or
hearsay and on the ground that the documents attached to the affidavit were
hearsay. The trial court sustained some but not all of the Firm's objections and
struck several portions of the affidavit, including several exhibits. On January
6, 1998, the trial court granted the Firm's motion for summary judgment, ordered
that Diversified take nothing on its claims against Hill Gilstrap, and assessed
costs against Diversified. Diversified now brings this appeal.
III. Legal Analysis
A. Diversified's Claim on the Note and Guaranties
Diversified contends in its first, second, and fourth issues that
Diversified's summary judgment evidence raised a material fact issue as to
Diversified's ownership of the note and guaranties and to the amount of money
the Firm owed on the note. We sustain Diversified's first, second, and fourth
issues.
1. Standard of Review
After an adequate time for discovery, the party without the burden of proof
may, without presenting evidence, move for summary judgment on the ground that
there is no evidence to support an essential element of the nonmovant's claim or
defense.(1) The motion must specifically state
the elements for which there is no evidence.(2)
The trial court must grant the motion unless the nonmovant produces summary
judgment evidence that raises a genuine issue of material fact.(3)
A no-evidence summary judgment is essentially a pretrial directed verdict,
and we apply the same legal sufficiency standard in reviewing a no-evidence
summary judgment as we apply in reviewing a directed verdict.(4)
We review the evidence in the light most favorable to the party against whom the
no-evidence summary judgment was rendered, disregarding all contrary evidence
and inferences.(5) If the nonmovant brings
forward more than a scintilla of probative evidence that raises a genuine issue
of material fact, then a no-evidence summary judgment is not proper.(6)
2. The Note
To collect on the promissory note Diversified must establish that: (a) a note
exists; (b) Diversified is the legal owner and holder of the note; (c) Hill
Gilstrap is the maker of the note; and (d) a certain balance remains due and
owing on the note.(7) The Firm argued in its
motion for summary judgment that Diversified had no evidence of the amount due
and owing on the note and no evidence that Diversified was the owner and holder
of the note.
To defeat the Firm's no-evidence motion, Diversified responded with the Olson
Affidavit. The affidavit included a sworn copy of the note upon which
Diversified is suing the Firm, and the note shows on its face: (1) that Hill
Gilstrap is the maker of the note; (2) the amount of the note; and (3) the
endorsements of both the FDIC in its corporate capacity ("FDIC-C") and
Systems. The Olson Affidavit also states in paragraph 4 that "[a] true and
correct copy of the original of the Note is attached hereto as Exhibit No. 1A
and incorporated herein for all purposes." The trial court struck neither
this portion of the Olson Affidavit nor the note itself. Accordingly, the note
is considered valid summary judgment evidence for purposes of this appeal.
a. Amount Due and Owing
According to the note, Hill Gilstrap promised to pay Commonwealth $50,000;
however, the note also contemplated that multiple advances were allowed and that
$50,000 was the maximum Hill Gilstrap could have borrowed. The note also stated
that the credit arrangement was open-ended, meaning the $50,000 could have been
borrowed more than once as long as the balance was paid off each time. Both
parties agreed at the time the note was signed that Commonwealth had advanced
$13,000 to Hill Gilstrap and that future advances were contemplated.
The Olson Affidavit also included a statement in paragraph 10 that

 [a]fter all just and lawful offsets, payments and credits, Defendants are
 indebted to Southeast with regard to the Note, Guaranty 1, and Guaranty 2, in
 the amount of $114,084.93, which includes principal and accrued interest to
 August 6, 1997, with prejudgment interest continuing to accrue from August 7,
 1997, in the amount of $24.66 per day until date of judgment.

Olson based his statement on an account statement which broke the figure down
into components of principal ($50,000), accrued interest to August 6, 1997
($64,084.93), and a daily dollar amount of interest ($24.66). This account
statement was attached to the affidavit as an exhibit. The Firm objected to all
of the exhibits attached to the Olson Affidavit arguing that because the
documents were not generated by Southeast, Olson could have no personal
knowledge about whether the documents were exact duplicates or true and correct
copies of the originals. The Firm further argued that the exhibits cannot
constitute business records of Southeast and are hearsay. We only review the
trial court's decision to strike the account statement.
On appeal, we review a trial court's decision to admit or exclude evidence
under an abuse of discretion standard of review.(8)
An appellate court must uphold the trial court's evidentiary ruling if there is
any legitimate basis in the record for the ruling.(9)
To determine whether a trial court abused its discretion, we must decide
whether the trial court acted without reference to any guiding rules or
principles; in other words, whether the act was arbitrary or unreasonable.(10)
Merely because a trial court may decide a matter within its discretion in a
different manner than an appellate court would in a similar circumstance does
not demonstrate that an abuse of discretion has occurred.(11)
An abuse of discretion does not occur where the trial court bases its
decisions on conflicting evidence.(12)
Furthermore, an abuse of discretion does not occur as long as some evidence of
substantive and probative character exists to support the trial court's
decision.(13)
The Firm argues in its objection that the account statement was not generated
by Southeast. However, of the two pages that make up the statement of the
account, the first page bears the initials "DFSE" in the header of the
document along with an address. The second page includes in its header the name
"Chuck Olson." In light of the fact that the affiant's name is Charles
Olson and the name of the company for which he works is "Diversified
Financial Southeast, Inc." or "DFSE" for short, there is no
evidence to support the trial court's conclusion that the account statement was
generated by a third party.(14) In fact, such a
conclusion would be unreasonable and arbitrary under the circumstances.(15)
We also note that on page 30 of its Appellee's Brief before this court, the Firm
judicially admitted that the account statement was produced by an employee of
Southeast and that "the documents themselves confirm this."(16)
The Firm also argues that the account statement does not meet the
requirements of the business records exception of rule 803(6) of the Texas Rules
of Evidence and, therefore, constitutes inadmissible hearsay. The account
statement was obviously offered to prove the truth of the matter asserted that
the Firm owes Diversified $114,650.88 and this amount is due and owing.(17)
However, to be admissible,(18) the exhibit must
qualify under the business records exception of rule 803(6).(19)
To lay the proper foundation for the exception, Olson must meet four
requirements: (i) the account statement was made and kept in the course of a
regularly conducted business activity; (ii) it was the regular practice of the
business activity to make the account statement; (iii) the account statement was
made at or near the time of the event that it records; and (iv) the account
statement was made by a person with knowledge who was acting in the regular
course of business.(20)
To lay the foundation for the business records exception, Olson stated:

 The exhibits attached hereto are exact duplicates and are true and correct
 copies of the original documents which are in the possession of Southeast. I
 am familiar with the records of Southeast and these records are kept in the
 regular course of business of Southeast. It was the regular course of business
 for Southeast for an employee or representative of Southeast with knowledge of
 the act of any condition, opinion or diagnosis recorded to make the record or
 to transmit information thereof to be included in such record and the record
 was made at or near the time or reasonably soon thereafter.

 
Olson's statement lays the proper foundation for each element of the business
records exception,(21) and to strike the account
statement was to act without reference to the rules of evidence.(22)
Furthermore, the trial court's decision to strike this exhibit was harmful
because without the details included in the account statement, Diversified would
be unable to establish that a material fact exists as to the certain amount due
and owing on the note.(23) We hold that the
trial court abused its discretion when it struck this exhibit.
In another objection, the Firm challenges Olson's statement regarding the
amount of the Firm's indebtedness. Specifically, the Firm argues that because
Olson "sets forth no specific facts in his Affidavit to support such a
conclusion," the statement does not constitute competent summary judgment
evidence. We disagree.
Generally, an affidavit by an employee of the financial institution to whom a
note is owed, which states the total amount due on the note, is sufficient to
raise a genuine issue of material fact of the amount owed.(24)
Detailed proof of the balance of the note is not required.(25)
The affidavit states that the Firm is indebted to Southeast in the amount of
$114,084.93 and that this figure includes both principal and interest to August
6, 1997. The affidavit also states that interest accrues at a daily rate of
$24.66 per day. We hold that the statement is not conclusory, and because
Diversified would have no evidence of its claim that a certain amount is due and
owing without Olson's statement, we hold that the trial court abused its
discretion when it struck the statement.(26)
Diversified is not required to conclusively establish the amount due and
owing on the note in order to defeat the Firm's no-evidence motion; more than a
scintilla of evidence will suffice.(27)
Considering Olson's statement and the exhibit offered in response to the Firm's
no-evidence motion and reviewing the evidence in the light most favorable to
Diversified and disregarding all contrary evidence and inferences, Diversified
has established more than a scintilla of probative evidence to raise a genuine
issue of material fact as to the amount due and owing on the note.(28)
We sustain Diversified's first and fourth issues as to Diversified's claim of a
certain amount due and owing.
b. Ownership of the Note
We next turn to Diversified's contention that its response to the Firm's
motion for summary judgment raised a fact issue as to the ownership of the note.
As an initial matter we point out that the note sued upon is not a negotiable
instrument,(29) and accordingly, the
endorsements on the note do not create a presumption of ownership upon transfer.(30)
In order to fall under the Texas Business & Commerce Code ("Commerce
Code"), a note must be a written unconditional promise to pay a sum certain
in money upon demand or at a definite time and payable to the order of a named
person or to bearer.(31)
The note between Hill Gilstrap and Commonwealth explicitly provides that
multiple advances are contemplated by the parties and that Hill Gilstrap will be
entitled to additional credit up to the maximum amount of the note once payments
have been applied against the outstanding balance of the note. The note states
that Hill Gilstrap promises to pay $50,000 to Commonwealth, but it also states
that at the signing of the note the Firm has only received a principal advance
of $13,000. Accordingly, the note is not for a fixed amount of money and is not
a negotiable instrument.(32) Even though the
note is not governed by the Commerce Code, the endorsements on the note do
constitute more than a scintilla of evidence of the assignments of title, and
therefore ownership, from the FDIC to Diversified and from Diversified to
Southeast.(33)
The Firm argues that there is a break in the chain of title from Commonwealth
to the FDIC. 12 U.S.C.A. §1821(d)(2)(A) provides that "[t]he Corporation
shall, as conservator or receiver, and by operation of law, succeed to--(i) all
rights, titles, powers, and privileges of the insured depository
institution" over which it is appointed.(34)
Essentially, the FDIC "steps into the shoes" of the failed bank and
acquires the rights to the assets held by that bank prior to receivership.(35)
Accordingly, an assignment is not required in order to transfer ownership of a
non-negotiable note from a financial institution to the FDIC when the financial
institution is placed into receivership.(36)
The Firm further argues that Diversified offered no evidence of the transfer
of the note from the FDIC as receiver ("FDIC-R") to the FDIC-C, and
therefore another break in the chain of title exists. "Section
1823(d)(3)(a) gives [FDIC-C] the same rights and powers as [FDIC-R] under §
1821. . . ."(37) By virtue of sections
1823(d)(3)(a) and 1821(d)(2)(A) Hill Gilstrap's argument fails because an
endorsement from the FDIC-R to the FDIC-C is not required.(38)
The note shows on its face the FDIC-C's endorsement to Systems. Disregarding
any conflicting statements and reviewing the evidence in the light most
favorable to Diversified, the endorsements on the note provide more than a
scintilla of probative evidence of Diversified's ownership of the note.(39)
We sustain Diversified's second issue as to Southeast's claim that it is the
owner and holder of the note.
3. The Guaranties
The Firm argues in its motion for summary judgment that Diversified does not
have any evidence that it is the owner and holder of the guaranties made by
Heard and Hill individually. Olson attached copies of Heard and Hill's
guaranties to his affidavit and swore that the photocopies were true and correct
copies of the originals. The trial court struck neither the guaranties nor
Olson's statement in his affidavit.
The language of each guaranty states that Heard and Hill agreed

 to pay to Commonwealth Bank . . . hereinafter called Creditor, its
 successor or assigns . . . any and all indebtedness which Hill, Heard, Oneal,
 Gilstrap & Goetz, P.C. . . . may now or at any time hereafter owe said
 Creditor, together with interest and collection costs.

There is no dollar limitation on the guaranties except for the amount due on
the note. Therefore, according to the terms of the guaranties and because
Diversified included sworn copies of the original guaranties which are in
Diverified's possession,(40) Diversified has
established more than a scintilla of evidence to overcome Hill Gilstrap's
summary judgment motion as to the ownership of the guaranties and as to the
amount owed on the guaranties.(41) We sustain
Diversified's second and fourth issues as they pertain to the guaranties.
B. Statute of Limitations
In its fifth issue, Diversified complains that the trial court erred in
granting the Firm summary judgment because the Firm did not present any evidence
in support of its statute of limitations affirmative defense and, alternatively,
if the Firm offered such evidence of the affirmative defense, Diversified
adduced summary judgment proof establishing that the claim is not time-barred.
Because Diversified's third issue also addresses the application of the statute
of limitations, we consider both of these issues together. We hold that
Diversified raised a material fact issue regarding the statute of limitations.
1. The Four-Year Statute of Limitations
Generally, a suit on a note must be filed within four years from the date the
cause of action accrues.(42) The Firm argued in
its motion for summary judgment that because the note upon which Systems bases
its claims shows a maturity date of May 1, 1990, and because the trial court can
take judicial notice of the date Systems filed this lawsuit,(43)
which was October 4, 1995, on the face of the pleadings Systems's claims are
barred by the statute of limitations.(44)
Therefore, the Firm argued, it has conclusively proven the affirmative defense,
and Diversified has no evidence to prove otherwise.
Diversified argues that this improperly places the burden of proof of the
affirmative defense on the plaintiffs--Diversified, and even if the Firm's
argument is true, Diversified has proven that the FDIC took over Commonwealth as
receiver and that, consequently, a longer statute of limitations applies to the
note and does not bar the claim.
In a motion for summary judgment, once the affirmative defense is
established, the burden shifts to the nonmovant-plaintiff to proffer summary
judgment evidence raising a fact issue to avoid the affirmative defense.(45)
2. The Six-Year Statute of Limitations
A successor to the FDIC's interest in a note may be entitled to the six-year
statute of limitations found in 12 U.S.C.A. § 1821(d)(14).(46)
The Financial Institutions Reform, Recovery, and Enforcement Act provides that
"the applicable statute of limitations with regard to any action brought by
the [FDIC] as conservator or receiver shall be . . . the 6-year period beginning
on the date the claim accrues."(47) This
limitations provision extends to the benefit of purchasers of assets from the
FDIC.(48)
The Firm argues that because Diversified failed to prove that Commonwealth
was placed under FDIC receivership, the six-year statute of limitations does not
apply. Specifically, the Firm alleges that: (1) there is no evidence that the
note ever belonged to the FDIC-R; (2) the note itself shows only an endorsement
by the FDIC in its corporate capacity; and (3) the FDIC-C and the
FDIC-R are separate entities.
Whether the FDIC-C and the FDIC-R are separate entities is irrelevant to
resolve this issue.(49) 12 U.S.C.A. §
1823(d)(3) states in pertinent part as follows:

 (d) Sale of assets to Corporation
         . . . .
 
 (3) Rights and powers of Corporation
 
 (A) In general
         With respect to any asset
 acquired or liability assumed pursuant to this section, the Corporation
 shall have all of the rights, powers, privileges, and authorities of the Corporation
 as receiver under sections 1821 . . . of this title.(50)
 
 

Accordingly, to overcome the Firm's summary judgment motion, Diversified must
come forward with evidence that raises a genuine issue of a material fact(51)
that the note was in default either before the FDIC acquired the note or during
its ownership of the note.(52)
3. Application to Systems
The note was attached to the Olson affidavit and admitted into summary
judgment evidence. The face of the note shows that the FDIC, in its corporate
capacity, endorsed the note made payable to Systems. Reviewing the evidence in
the light most favorable to Diversified, we hold that Diversified brought forth
more than a scintilla of evidence that Systems's claim is not time-barred.
4. Application to Southeast
In its summary judgment motion the Firm argues that Southeast is not only
barred by the four-year statute of limitations, but if the court determines that
the six-year limitation applies, then it is also barred by the six-year
limitation because Southeast intervened more than six years after the note
matured. When an intervener sues on the same note that was in issue when the
original petition was filed, introduces no new causes of action against the
defendant, and does not change the allegations against the defendant, the
intervention does not constitute a new cause of action such that the statute of
limitations would apply.(53) We sustain
Diversified's third and fifth issues.
IV. Conclusion
Having held that Diversified raised material fact issues on its claims and on
the Firm's affirmative defense, we reverse the trial court's summary judgment
for the Firm and remand the case to the trial court for trial on the merits.
 
                                                                           
LEE ANN DAUPHINOT
                                                                           
JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.
CAYCE, C.J. concurs without opinion.
[Delivered February 13, 2003]

1. Tex. R. Civ. P. 166a(i).
2. Id.; In re Mohawk Rubber Co., 982
S.W.2d 494, 497-98 (Tex. App.--Texarkana 1998, orig. proceeding).
3. See Tex. R. Civ. P. 166a(i) cmt.; Moore v.
K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.--San Antonio 1998, pet.
denied); Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 71 (Tex.
App.--Austin 1998, no pet.).
4. Frazier v. Yu, 987 S.W.2d 607, 610 (Tex.
App.--Fort Worth 1999, pet. denied); Moore, 981 S.W.2d at 269.
5. Szczepanik v. First S. Trust Co., 883 S.W.2d
648, 649 (Tex. 1994).
6. Moore, 981 S.W.2d at 269.
7. Commercial Servs. of Perry, Inc. v. Wooldridge,
968 S.W.2d 560, 564 (Tex. App.--Fort Worth 1998, no pet.).
8. Nat'l Liab. & Fire Ins. Co. v. Allen, 15
S.W.3d 525, 527-28 (Tex. 2000); see also James v. Kloos, 75 S.W.3d 153,
159 (Tex. App.--Fort Worth 2002, no pet.).
9. Owens-Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998).
10. See Garcia v. Martinez, 988 S.W.2d 219, 222
(Tex. 1999); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).
11. Downer, 701 S.W.2d at 241-42.
12. Davis v. Huey, 571 S.W.2d 859, 862 (Tex.
1978); see also Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).
13. Holley v. Holley, 864 S.W.2d 703, 706 (Tex.
App.--Houston [1st Dist.] 1993, writ denied).
14. See id.
15. See James, 75 S.W.3d at 159.
16. See Jansen v. Fitzpatrick, 14 S.W.3d 426,
431 (Tex. App.--Houston [14th Dist.] 2000); see also Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000); see also Holy
Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001).
17. Tex. R. Evid. 801(d).
18. Tex. R. Civ. Proc. 166(f).
19. See Tex. R. Evid. 803(6).
20. Daimler-Benz Aktiengesellschaft v. Olson, 21
S.W.3d 707, 716 (Tex. App.--Austin), pet. dism'd w.o.j., 53 S.W.3d 308
(Tex. 2000).
21. See Tex. R. Evid. 803(6).
22. See Garcia, 988 S.W.2d at 222.
23. See James, 75 S.W.3d at 159.
24. Martin v. First Republic Bank, 799 S.W.2d
482, 485 (Tex. App.--Fort Worth 1990, writ denied); see also Stucki v. Noble,
963 S.W.2d 776, 782 (Tex. App.--San Antonio 1998, pet. denied).
25. Hudspeth v. Investor Collection Servs. Ltd.
P'ship, 985 S.W.2d 477, 479 (Tex. App.--San Antonio 1998, no pet.).
26. See James, 75 S.W.3d at 159.
27. See Moore, 981 S.W.2d at 269.
28. See Szczepanik, 883 S.W.2d at 649.
29. See Tex. Bus. & Com. Code Ann. §§
3.104(a), 3.106 (Vernon 2002); see also Dillard v. NCNB Tex. Nat'l Bank,
815 S.W.2d 356, 360 (Tex. App.--Austin 1991, no writ).
30. See Tex. Bus. & Com. Code Ann. § 3.201;
see also Dillard, 815 S.W.2d at 360.
31. Tex. Bus. & Com. Code Ann. § 3.104(a).
32. See id.
33. See Dillard, 815 S.W.2d at 360.
34. 12 U.S.C.A. § 1821(d)(2)(A) (West 2001).
35. O'Melveny & Myers v. FDIC, 512 U.S. 79,
86, 114 S. Ct. 2048, 2054 (1994); see also 12 U.S.C.A. §
1821(d)(2)(A).
36. See id.
37. Geiselman v. Cramer Fin. Group, Inc., 965
S.W.2d 532, 540 (Tex. App.--Houston [14th Dist.] 1997, no pet.)
(citing FDIC v. Howse, 736 F. Supp. 1437, 1445 (S.D. Tex. 1990)); see
also 12 U.S.C.A. § 1823(d)(3)(A).
38. Bosque Asset Corp. v. Greenberg, 19 S.W.3d
514, 520 (Tex. App.--Eastland 2000, pet. denied), overruled on other grounds
by Hight v. Dublin Veterinary Clinic, 22 S.W.3d 614, 618 (Tex.
App.--Eastland 2000, no pet.); see 12 U.S.C.A. §§ 1821(d)(2)(A),
1823(d)(3)(A); see also Boyd v. Diversified Fin. Sys., 1 S.W.3d 888,
891-92 (Tex. App.--Dallas 1999, no pet.); see also FDIC v. Patel, 46
F.3d 482, 485 (5th Cir. 1995).
39. Dillard 815 S.W.2d at 360.
40. See Boyd, 1 S.W.3d at 893.
41. See Moore, 981 S.W.2d at 269.
42. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3)
(Vernon 2002).
43. See Attorney Gen. v. Duncan, 929 S.W.2d 567,
570-71 (Tex. App.--Fort Worth 1996, no writ).
44. See Tex. Civ. Prac. & Rem. Code Ann. §
16.004(a)(3).
45. See Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 121 (Tex. 1996).
46. Jackson v. Thweatt, 883 S.W.2d 171, 176
(Tex. 1994); see also FDIC, 736 F. Supp. at 1445.
47.12 U.S.C.A. § 1821(d)(14)(A) (West 2001).
48. Jackson, 883 S.W.2d at 176.
49. See 12 U.S.C.A. § 1823(d)(3)(A); see
also Geiselman, 965 S.W.2d at 540.
50.12 U.S.C.A. § 1823(d)(3)(a) (emphasis added).
51. See Tex. R. Civ. P. 166a(i) cmt.; see
also Moore, 981 S.W.2d at 269.
52. See Geiselman, 965 S.W.2d at 540.
53. Bosque Asset Corp., 19 S.W.3d at 522; see
also Russell v. People's Nat'l Bank, 2 S.W.2d 961, 962 (Tex. App.--Austin
1928, writ ref'd).